Fernando A. Miranda RIVERA; Awilda I. Oliveras Linares, individually, and on behalf of the legal partnership made up between them, Plaintiffs,

v.

BANK ONE and its Visa Card; XYZ Insurance Company, Defendants.

Civ. No. 91–2117 (HL).

United States District Court,
D. Puerto Rico.

Jan. 14, 1993.

**616**

Angel M. Rivera–Munich, Hato Rey, PR, for plaintiffs.

Manuel Fernandez–Bared, McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz–Suria, San Juan, PR, for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is defendant, Bank One's ("Bank One"), motion to dismiss the complaint for lack of subject matter and personal jurisdiction, or, in the alternative, to quash plaintiff's attempted service of defendant for noncompliance with Federal Rule of Civil Procedure 4(d)(3).

Plaintiff claims that Bank One tortiously refused to correct false information concerning a delinquent Visa card account that had mistakenly appeared on his credit report. According to plaintiff the Visa account was fraudulently established in his name. Plaintiff denies ever having applied for or using the card. Despite plaintiff's attempts to rectify the situation with Bank One's fraud control unit, defendant refused to take any corrective measures until plaintiff first paid the outstanding balance. The reported delinquency badly tarnished plaintiff's credit rating. As a result, plaintiff has repeatedly been denied the financing necessary to purchase a home.

## PERSONAL JURISDICTION

### I. METHODOLOGY OF REVIEW

In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists over the non-resident defendant. *Boit v. Gar–Tec*, 967 F.2d 671, 675 (1st Cir. 1992). In order to meet its burden, plaintiff must make a prima facie showing that jurisdiction exists based on specific facts alleged in the pleadings, affidavits, and exhibits. *Ealing Corp. v. Harrods, Ltd.*, 790 F.2d 978, 979 (1st Cir.1986). In applying the "prima facie" standard, the district court "consider[s] only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit*, 967 F.2d at 675. The "plaintiff must make the showing as to every fact required to satisfy both the forum's long-arm statute and the due process clause of the Constitution." *Id.* (*citing, U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir.1990)).

■ The prima facie showing of personal jurisdiction must be based on evidence which goes beyond the pleadings; some form of affirmative proof is required. *Boit*, 967 F.2d at 675 (*citing, Chlebda v. H.E. Fortna & Bro. Inc.*, 609 F.2d 1022, 1024 (1st Cir.1979)). If properly supported, proffers of evidence by a plaintiff are, then, to be taken as true. *Boit*, 967 F.2d at 675 (*citing, Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389 (8th Cir.1991)); *Murphy v. Erwin–Wasey, Inc.*, 460 F.2d 661, 663 (1st Cir.1972)).

## II. ANALYTICAL FRAMEWORK

■ In diversity cases, a district court's power to assert personal jurisdiction over a nonresident defendant is governed by the state's long-arm statute. *Pizarro v. Hoteles Concorde Int'l, C.A.*, 907 F.2d 1256, 1258 (1st Cir.1990). Puerto Rico's long-arm statute [1] has been held to extend to all cases where it is constitutionally permissible. *Industrias Siderúrgicas v. Thyssen Steel Caribbean, Inc.*, 114 D.P.R. 548, 558 (1983); *A.H. Thomas Co. v. Superior Court*, 98 P.R.R. 864, 870 n. 5 (1970). In the leading case, *A.H. Thomas*, the Supreme Court of Puerto Rico, relying on *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), suggested a tripartite test for ascertaining whether personal jurisdiction can be exercised over a nonresident defendant. *See, Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 904 (1st Cir. 1980); *Pizarro*, 907 F.2d at 1258. The test, as summarized in *Escude Cruz*, provides that:

> One, there must be an act done or consummated within the forum by the nonresident defendant. Physical presence is not necessary; the act or transaction may be by mail. Two, the cause of action must arise out of the defendant's action within the forum state. Three, the activity linking defendant, forum and

cause of action must be substantial enough to meet the due process requirements of "fair play and substantial justice."

*Id.*, 619 F.2d at 904–05 (*citing, A.H. Thomas*, 98 P.R.R. at 870). Although *A.H. Thomas* is often cited as binding law by courts in this district and by the First Circuit, the decision has produced far less consistent results in terms of how these courts actually analyze personal jurisdiction. For instance, one recurring issue which has never been explicitly addressed is whether constitutional analysis, by itself, suffices to properly adjudicate personal jurisdiction issues which might otherwise implicate Puerto Rico's long-arm statute. While the standard adopted in *A.H. Thomas* clearly mirrors the language of cases dealing with constitutional due process requirements in the context of personal jurisdiction, it was, nevertheless, articulated as a test of whether personal jurisdiction can be obtained under Rule 4.7. Nevertheless, in certain cases, the position appears to be that *A.H. Thomas* obviates the need for determining whether jurisdiction is authorized under the Puerto Rico long-arm statute. Courts in these cases simply conduct constitutional "minimum contacts" analysis. *See e.g., Dalmau Rodriguez v. Hughes Aircraft Co.*, 781 F.2d 9, 12 (1st Cir.1986); *Vencedor Manufacturing Co. Inc. v. Gougler Industries, Inc.*, 557 F.2d 886, 889 (1st Cir.1977); *Viacom International, Inc. v. Three Star Telecast, Inc.*, 639 F.Supp. 1277 (D.P.R.1986); *cf. Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671 (1st Cir.1992) (following this approach in case involving Maine long-arm statute). In *Dalmau Rodriguez*, 781 F.2d at 12, for instance, the First Circuit cited *A.H. Thomas* and stated that the "inquiry into the requirements for state-law jurisdiction is, therefore, telescoped into a due process constitutional analysis."

In direct contrast to this approach, courts in other cases have analyzed the constitutional dimension of jurisdictional issues, if at all, only after addressing the requirements of the Puerto Rico long-arm

---

**1.** Puerto Rico Rules of Civil Procedure 4.7.

statute. *See e.g., Pizarro v. Hoteles Concorde Intern., C.A.,* 907 F.2d 1256, 1258 (1st Cir.1990) (granting motion to dismiss for lack of personal jurisdiction because second prong of *A.H. Thomas* test was not met); *American Exp. Intern., Inc. v. Mendez–Capellan,* 889 F.2d 1175 (1st Cir.1989); *Davila–Fermin v. Southeast Bank, N.A.,* 738 F.Supp. 45 (D.P.R.1990); *cf., U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.,* 894 F.2d 9, 11 (1st Cir.1990) (adopting two-prong statutory/constitutional test but dismissing action for lack of personal jurisdiction on constitutional grounds without delving into statutory analysis); *United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992) (following statutory/constitutional analysis in case involving Massachusetts long-arm statute). In *American Exp.,* 889 F.2d at 1178, for example, the First Circuit wrote:

> This court has stated that "Puerto Rico's 'long-arm' rule permits the exercise of jurisdiction to the full extent of constitutional authority." [citations omitted] Before confronting the constitutional limitations, however, it is necessary to determine whether AMEX's claim satisfies Puerto Rico's long-arm statute.

This approach was also followed in *Davila–Fermin,* 738 F.Supp. at 47:

> our inquiry into jurisdiction in the case at bar is two-fold. [citations omitted] First, ..., a determination must be made over whether the assertion of jurisdiction is authorized by the Commonwealth's long-arm statute. [citations omitted] If authorized, such exercise of personal jurisdiction must be found to be consistent with the due process requirement of the United States Constitution.

In Part, this discrepancy has arisen as federal courts have responded to the holding of the Supreme Court of Puerto Rico in *A.H. Thomas.* However, that Court has provided guidance on this very issue which is often overlooked. In *Industrias Siderúrgicas,* 114 D.P.R. 548, 558 (1983); 14 Puerto Rico Supreme Court Official Translations 708, 721 at n. 5, the Court wrote:

In construing our long arm statute, the First Circuit Court of Appeals of the United States has expressed that Rule 4.7 of the Rules of Civil Procedure attempts to extend the exercise of the in personam jurisdiction of the Commonwealth of Puerto Rico to the full extent of its constitutional authority. [citations omitted].

We should clarify, however, that an affirmative action which, from a constitutional point of view, represents a minimum contact between a nonresident and our jurisdiction is not per se sufficient to authorize our courts to exercise their jurisdiction if said action cannot be framed within any of the circumstances described in Rule 4.7 of the Rules of Civil Procedure. For it to be otherwise it would be necessary to adopt a statute like the California statute which reads:

> "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal.Code Civ.Proc., sec. 410.10 (West 1973); see M Green, *Jurisdictional Reform in California,* 21 Hastings L.J. 1219 (1970).

This norm would, however, be much more difficult to apply, and while Rule 4.7 is left unamended to that effect, the initial query should always be to determine if the conduct attributed to the nonresident is comprised within its provisions. *See, World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 289–290 [100 S.Ct. 559, 563, 62 L.Ed.2d 490] (1980).

Against the background of inconsistency described above, this comment conveys a clear message that statutory analysis continues to be appropriate despite the broad construction of Rule 4.7. In accordance with cases such as *Pizarro v. Hoteles Concorde Intern., C.A., American Exp. Intern., Inc. v. Mendez–Capellan,* and *Davila–Fermin v. Southeast Bank, N.A.* and with due regard for the guidance provided by the Supreme Court of Puerto Rico in *Industrias Siderúrgicas v. Thyssen Steel Caribbean, Inc.,* we adopt a two-tiered ana-

lytical structure addressed both to statutory and constitutional concerns.

## III. STATUTORY STANDARD

Rule 4.7 of the Puerto Rico Rules of Civil Procedure states, in relevant part, that:

(a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:

(1) Transacted business in Puerto Rico personally or through an agent; or

(2) Participated in tortious acts within Puerto Rico personally or through an agent....

■ With regard to whether jurisdiction can be properly exercised under subsection (a)(1) of Rule 4.7, we find the facts in the record to be insufficient to meet its criteria. Defendant has submitted a verified statement from one of its Senior Tax Accountants which remains unopposed in many of its material allegations. This statement indicates that Bank One Corporation is a bank holding company organized under Ohio law which indirectly owns Bank One, Columbus, N.A. (the defendant herein); that Bank One has no offices, employees, representatives or agents in Puerto Rico; that Bank One never owned, used, leased, by itself or through an agent, movable or immovable property in Puerto Rico; and that no directors or officers of Bank One reside in Puerto Rico. In a verified statement submitted by an Assistant Vice President at Bank One, it is stated that all the charges to the delinquent account were posted in Columbus, Ohio and were based upon purchases and/or cash advances which were made in the states of Ohio, Georgia, Alabama and Virginia. No evidence has been presented to contradict these allegations. Therefore, it is manifestly clear that Bank One has not engaged in any conduct under subsection (a)(1) of the Puerto Rico long-arm statute which satisfies the first prong of the *A.H. Thomas* jurisdictional test, that an act be "done or consummated within the forum by the nonresident defendant." Neither party has stated whether Bank One has other credit card customers in Puerto Rico. However, even if this were the case, the business transactions represented by these contacts would be unrelated to plaintiff's cause of action.

■ With respect to subsection (a)(2) of the Rule 4.7, we find, instead, that the record contains a prima facie showing of tortious conduct within Puerto Rico. In its motion to dismiss, defendant devotes most of its energy to arguing that no causal nexus exists between Bank One's actions and plaintiff's claim. Before addressing this argument, we take a step back to address the first prong of the *A.H. Thomas* test. Subsection (a)(2) of Rule 4.7 would authorize jurisdiction over Bank One only if it "participated in tortious acts within Puerto Rico." Since it is not claimed that defendant's tortious acts took place in Puerto Rico, we are confronted with an issue of statutory construction addressed by the court in *Davila–Fermin v. Southeast Bank, N.A.*, 738 F.Supp. 45, 48–49 (D.P.R.1990): whether the operative language of subsection (a)(2) should be construed as "including the commission of tortious acts outside Puerto Rico when their effects are felt within the Commonwealth." *Id.*, 738 F.Supp. at 48. The court correctly noted that "to interpret the Puerto Rican rule we 'must look at its language, history and at its construction by the Supreme Court of Puerto Rico.'" *Id.* The court went on to note that the legislative history of the rule appears to support a liberal reading of its express provisions, and that the Supreme Court of Puerto Rico has broadly interpreted the term "business transaction" in subsection (a)(1) to include the mere act of sending mail to Puerto Rico from another jurisdiction. *Id.*, 738 F.Supp. at 48. Nevertheless, the court in *Davila–Fermin* never decided whether the plaintiff had made out a prima facie case authorizing personal jurisdiction under subsection (a)(2), and, instead, disposed of the case on constitutional due process grounds.

The argument that Rule 4.7(a)(2) should be interpreted to confer jurisdiction over a nonresident who commits a tort outside of Puerto Rico the effects of which are felt

within the Commonwealth was also presented in *Escude Cruz*, 619 F.2d at 908. The First Circuit declined to reach the issue, but noted that "the district court suggested that the Rule might be interpreted as appellant urges, and we do not disagree ... [however] the interpretation of the Rule, of course, is a matter for the Commonwealth courts." *Id.*, 619 F.2d at 908, n. 3. In point of fact, several cases recognize that the Supreme Court of Puerto Rico has not provided interpretive guidance on this issue. *See, Davila–Fermin*, 738 F.Supp. at 48; *Rubi v. Sladewski*, 641 F.Supp. 536, 538 (D.P.R.1986); *Mangual v. General Battery Corp.*, 710 F.2d 15, 19 (1st Cir. 1983). Similarly, our research disclosed no cases on point.

The First Circuit next addressed the issue in *Mangual v. General Battery Corp.*, 710 F.2d 15, 19 (1st Cir.1983), where it reasoned that, in light of *A.H. Thomas*, subsection (a)(2) can be interpreted as extending jurisdiction to the limits of constitutional authority. Citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), the court introduced the concept of "purposeful availment" and foreseeability into the analysis associated with this subsection:

> Therefore, we think that jurisdiction may be asserted under 4.7(a)(2) where a defendant who has availed himself of the laws and benefits of Puerto Rico commits a tortious act within or without the Commonwealth that he knows or reasonably should know will cause injury within Puerto Rico.

*Mangual*, 710 F.2d at 19. This interpretation is supported by the legislative history of the rule, *see, Davila–Fermin*, 738 F.Supp. at 48; by cases liberally construing the language of subsection (a)(1) to require no physical presence, *see, A.H. Thomas*, 98 P.R.R. 864 (1970); *Medina v. Tribunal Superior*, 104 D.P.R. 346, 356 (1975); and by the cases construing the rule to be coexten-

sive with constitutional due process. Based on these factors, there is little indication that the Supreme Court of Puerto Rico would reach a different result. Accordingly, we adopt the construction of Rule 4.7 set forth by the First Circuit in *Mangual*.

In addressing whether jurisdiction over Bank One is authorized by Rule 4.7, both parties rely in part on *Davila–Fermin v. Southeast Bank, N.A.*, 738 F.Supp. 45, 48 (D.P.R.1990). One issue in *Davila–Fermin* consisted of interpreting whether the phrase "participated in tortious acts within Puerto Rico" could be interpreted as including the commission of tortious acts outside Puerto Rico when their effects are felt within the Commonwealth. The district court in *Davila–Fermin* granted the defendant's motion to dismiss for lack of personal jurisdiction. In reaching that decision, the court recognized the relevance of the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), but proceeded to distinguish the case on its facts[2]:

> ... in *Calder* it was proved to the Court that defendant knew that the effects of their action were going to be felt specifically in California. But it is precisely that same type of purposeful action directed at the forum State what we found missing in the present case. ... we have reached the conclusion that there was no evidence in the record that defendant knew, at the time of the commission of the alleged tortious act in Florida, that plaintiffs were already residents of Puerto Rico, or that the "brunt of the injury" was going to be felt by them at the Island.

*Davila–Fermin*, 738 F.Supp. at 49. In the case before us, plaintiff alleges that defendant's tortious act in Puerto Rico consisted of its failure to correct his credit report, *knowing* during this time, through his statements under oath, that the information reported by defendant was causing

---

**2.** In *Calder*, the Supreme Court held that an individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly caused the injury in California. The Court held that an

allegation of personal jurisdiction can be supported by unlawful activity initiated outside the forum and affecting a plaintiff inside the forum. *Calder*, 465 U.S. at 789–90, 104 S.Ct. at 1487.

damages to him in Puerto Rico. Bank One allegedly knew more than a year before the filing of the present complaint that plaintiff was domiciled in Puerto Rico, that the information it was providing to credit agencies was allegedly incorrect, and that as a result plaintiff had found it impossible to obtain credit for the purchase of a home in Puerto Rico. Taking the allegations as true, in conjunction with the available documentation, the Court finds the plaintiff has sustained his burden of showing a tortious act committed by defendant within Puerto Rico. In reaching this decision we form no opinion as to Bank One's actual liability; we merely find that plaintiff has established the prima facie showing necessary to support jurisdiction under Rule 4.7(a)(2).

## IV. CONSTITUTIONAL STANDARD AND ANALYSIS

A court's exercise of personal jurisdiction over a nonresident defendant comports with constitutional due process requirements when the defendant has purposefully established certain minimum contacts with the forum state "such that the maintenance of the suit [would] not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The Supreme Court has rejected talismanic formulas in assessing whether the exercise of personal jurisdiction comports with fair play and substantial justice and has counselled that "the facts of each case must [always] be weighed." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485–86, 105 S.Ct. 2174, 2189, 85 L.Ed.2d 528 (1985). Additionally, the Supreme Court has introduced several concepts designed both to test the nature and quality of the relationship among the defendant, the forum and the litigation, and to guide the decisionmaker's minimum contacts analysis. *See generally, United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Co.*, 960 F.2d 1080, 1088 (1st Cir. 1992) (discussing concepts of "purposeful availment", reasonableness and foreseeability). First, the defendant must have "purposefully avail[ed] itself" of the privilege of conducting activities within the forum state, thereby invoking the benefit and protection of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). "The 'purposeful availment' requirement guards against the possibility that a defendant will be haled into a forum solely as a result of 'random, isolated, or fortuitous' contacts." *First American First v. National Ass'n of Bank Women*, 802 F.2d 1511 (4th Cir.1986) (citing, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)). Second, the concept of foreseeability requires that the defendant's conduct with the forum state be such that "he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). A defendant that has purposefully conducted activities in the forum state has clear notice that it is subject to suit there. *Id.* at 297, 100 S.Ct. at 567. Finally, even where purposefully generated contacts exist, "courts must consider a panoply of other factors which bear upon the fairness [or reasonableness] of subjecting a nonresident to the authority of a foreign tribunal." *United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Co.*, 960 F.2d 1080, 1088 (1st Cir. 1992) (citing, Donatelli v. National Hockey League, 893 F.2d 459, 462–65 (1st Cir. 1990)). In *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184, the Supreme Court identified five relevant factors: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interest of all sovereigns in promoting substantive social policies.[3]

---

**3.** In *Donatelli*, 893 F.2d at 465, the First Circuit Court of Appeals termed these five criteria the "Gestalt factors."

■ Minimum contacts with the forum state may arise through a federal court's "general" or "specific" jurisdiction over a non-resident defendant. General jurisdiction is invoked "when the litigation is not directly founded on the defendant's forum-based contacts but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Co.,* 960 F.2d 1080, 1088 (1st Cir.1992) (*citing, Helicópteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16 & n. 9, 104 S.Ct. 1868, 1872–1873 & n. 9, 80 L.Ed.2d 404 (1984)).

Specific personal jurisdiction is invoked "where the cause of action arises directly out of, or relates to, the defendant's forum based contacts." *Id.* at 1089. The First Circuit has developed a tripartite test for the ascertainment of specific jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducing activities in the forum state, thereby invoking the benefits and protection of the state's laws and making the defendant's involuntary presence before the state courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*United Electrical Workers,* 960 F.2d at 1089.

■ Plaintiff's cause of action stems from Bank One's alleged tortious refusal to correct plaintiff's credit, knowing that the information it was providing to credit reporting agencies was causing damages to plaintiff *in Puerto Rico.* Because plaintiff's claim embodies an allegation of specific jurisdiction, we may apply the test recently enunciated in *United Electrical Workers.*

Plaintiff has presented evidence of an intricate weave of written correspondence and telephone communications between the parties while he was in Puerto Rico. In particular, plaintiff has submitted 1) a sworn statement in which he states that the credit information reported by Bank One was not only incorrect but was causing damages to plaintiff's credit within Puerto Rico and that he had neither applied for nor used any Bank One credit card; 2) letters from plaintiff addressed to Bank One submitting evidence to support his assertion that the signature on the credit card application was not his, but rather his ex-wife's, and that he was divorced from his ex-wife when she allegedly used his personal information to obtain the card; and 3) letters from the Bank Card Fraud unit at Bank One to plaintiff. The following inferences can also be reasonably drawn from the correspondence in the record: that Bank One representatives had tried reaching plaintiff by phone on several occasions; that Bank One's position was that plaintiff should pay the debt that appeared in his name; and that defendant had refused to correct plaintiff's credit information. Defendants, in turn, have submitted an affidavit containing statements to the effect that, as a creditor, Bank One reports account information on its own customers but does so via magnetic transfer tape to agencies located in Ohio, California, Georgia and Texas. Although, the allegedly tortious conduct consisting in the corporate decisions not to correct the false credit information and to report this information to credit profile agencies occurred outside of Puerto Rico, its effects were clearly felt here, and nowhere else. Thus, to satisfy the specific jurisdiction relatedness requirement embodied in the first prong of the *United Electrical Workers* test, we must determine whether an act of a corporation outside a state that causes tortious injury within the state can subject the corporation to the jurisdiction of a federal court in that forum.

The case *Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984) is controlling on this point. In *Calder,* the Supreme Court held that jurisdiction over nonresident defendants was proper in California "based on the 'effects' of their Florida conduct in California." *Id.,* 465 U.S. at 790, 104 S.Ct. at 1487. The Court found it persuasive that defendants

had not been "charged with mere untargeted negligence," but rather, that they "wrote ... and edited an article that they knew would have a potentially devastating impact upon respondent." Despite petitioners argument that they were not responsible for the circulation of the article, the Court wrote "Here, the plaintiff is the focus of the activities out of which the suit arises." *Id.*

In the present case, plaintiff, a resident of Puerto Rico, is undoubtedly the focus of the activities out of which the suit has arisen. The reported account information was included in his credit profile. The mistaken information has allegedly prevented him from purchasing a home in Puerto Rico. The brunt of the harm both in terms of the mental anguish suffered by plaintiff and the injury to his credit background was suffered in Puerto Rico. Defendant's conduct was not mere "untargeted negligence." Quite to the contrary, a Bank Card issuer's ability to report on the credit habits of its customers is powerful tool designed, in part, to wrench compliance with payment terms from its cardholder. Bank One's alleged refusal to correct mistaken information can only be seen as an attempt to tighten the screws on a nonpaying customer. It is manifestly clear, that this response was directed at plaintiff, and that its effects were felt in Puerto Rico. Thus, the Court finds the relatedness requirement of specific jurisdiction to be satisfied.

The second prong of the *United Electrical Workers* test tracks language from the Supreme Court's opinions in *Hanson* and *World–Wide Volkswagen.* The plaintiff must establish that defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protection of the state's laws, and making the defendant's involuntary presence before that forum's tribunals foreseeable.

In deciding whether Bank One's contacts amount to a purposeful availment of the privilege of conducting activities within this forum, we are guided by the

First Circuit's analysis in *Vencedor Mfg. Co., Inc. v. Gougler Industries,* 557 F.2d 886, 890 (1st Cir.1977):

> The verbal formula used by the *Hanson* Court to justify its holding is not easy to apply. It is hard to say when a corporation has "purposefully" availed itself of "the privilege of conducting activities within the forum State", or when it has invoked "the benefits and protection" of a state's laws. *International Shoe* stands as a warning that conclusory labels such as "presence" or "purposefully availing" should not replace a practical concern for the facts of each case. *Hanson's* language suggests that some sort of voluntary association with the forum is a jurisdictional prerequisite. Further elaboration of *Hanson's* formula should depend on a case-by-case analysis of contacts rather than a parsing of the Court's language.

The court also wrote: "when a cause of action arises from the defendant's contacts with the forum, less is required to support jurisdiction than when the cause of action is unrelated to those contacts." *Vencedor,* 557 F.2d at 889 (*citing, International Shoe,* 326 U.S. at 317, 66 S.Ct. at 154). The purposeful availment requirement attempts to assure that a nonresident defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person. *Burger King Corp. v. Rudzewicz,* 471 U.S. at 475, 105 S.Ct. at 2185. However, "the requirement is but a test for determining the more fundamental issue of whether a 'defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.'" *Haisten v. Grass Valley Medical Reimbursement,* 784 F.2d 1392, 1397 (9th Cir.1986) (*citing, World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 297, 100 S.Ct. at 567. In this case, once plaintiff made the initial contact with Bank One in an effort to rectify his credit standing, the defendant voluntarily associated itself with this forum for the purposes of collecting the remaining balance on the account. The contacts established in this process gave

rise to the claim underlying this litigation. In this sense, this case differs from *Davila–Fermin*, 738 F.Supp. 45 (D.P.R.1990).

In *Davila–Fermin*, plaintiff applied for and was issued Visa and Mastercard credit cards by defendant, Southeast Bank, N.A. ("Southeast Bank"). Plaintiff's credit privileges on both accounts were eventually revoked for alleged non-payment of the outstanding balance. Plaintiff informed Southeast Bank that the alleged outstanding sum was not owing and requested an investigation to correct the situation. It was further alleged that Southeast Bank failed to correct its records and that it provided information regarding non-payment of the overdue accounts to credit reporting agencies in Florida. Consequently, plaintiff was later denied credit privileges by other creditors. The court emphasized that the alleged tortious conduct committed by defendant in Florida "produced its effects in Puerto Rico only because of plaintiffs unilateral decision of seeking credit while being a resident of that forum". *Id.*, 738 F.Supp. at 50. In the absence of other meaningful contacts, the court could not conclude that defendant's activities amounted to "purposeful availment" or should have caused them to reasonably anticipate being haled into a tribunal in Puerto Rico. *Id.*

In the case at bar, plaintiff's name and address were fraudulently used to obtain a Visa card which he never requested or used. Plaintiff only learned of the account when he was informed that delinquent obligations had appeared in his credit profile. He contacted defendant, not to seek credit, but to rectify a problem that had already caused him injury in Puerto Rico. For its part, defendant seems to have seized upon this initial contact as an opportunity make plaintiff answerable for the debt incurred by the fraudulent user of the card. After the initial contact, Bank One voluntarily and purposefully generated contacts with this forum in an effort to collect the outstanding debt.

Several courts have read the Supreme Court's decision in *Calder v. Jones* to support jurisdiction over a defendant whose only contact with the forum state is the purposeful direction of a foreign act having an effect in the forum state. *See, Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1397 (9th Cir.1986). In *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257 (9th Cir.1989), the Ninth Circuit held that the purposeful availment requirement may be satisfied if the nonresident defendant intentionally directed his tortious conduct into the forum. Similarly, in *Coblentz GMC/Freightliner v. General Motors Corp.*, 724 F.Supp. 1364, 1369 (M.D.Ala.1989) the court recognized that:

> ... when the origin of a deliberate, non-fortuitous tort is in one state ... and the intended injury to a recognized victim is in another state, the tortfeasor has affirmatively established minimum contacts with the state in which the injury occurred, if the tortfeasor knew at the time it committed the alleged tort that the victim would be injured in that state.

Plaintiff has alleged that Bank One acted tortiously by not correcting the information in his credit profile, knowing that the incorrect information it was providing to credit agencies was causing him damage. The record contains ample evidence of communications between plaintiff and defendant which tend to establish that defendant was aware that its continued refusal to correct plaintiff's credit report was causing plaintiff injury in Puerto Rico. Precisely this knowledge was lacking in *Davila–Fermin*, 738 F.Supp. at 49, where the Court wrote: "there is no evidence that defendant knew, at the time of the commission of its alleged tortious acts in Florida, that plaintiffs were already residents of Puerto Rico, or that the 'brunt of their injury' was going to be felt by them at the Island." From the allegations in the complaint and the evidence presented by plaintiff, it is apparent that defendant knew that its actions or omissions were causing damages to plaintiff in Puerto Rico and that for more than a year it failed to correct the alleged mistakes. Thus, we are persuaded that once Bank One was in possession of this knowledge and continued to refuse plaintiff's request to correct the mistaken information,

it could reasonably anticipate being haled into court here to answer for its actions.

■ The third prong of the *United Electrical Workers* jurisdictional test requires application of the five Gestalt factors. Once a prima facie showing is made with respect to the existence of minimum contacts, it becomes the defendant's burden to demonstrate that the assertion of jurisdiction would be unreasonable. Wright & Miller, 4 Federal Practice and Procedure: Civil 2d § 1067, p. 301–302; *see also, Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985); *Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d at 1397 ("there is a presumption of reasonableness upon a showing that the defendant purposefully directed his activities at forum residents which the defendant bears the burden of overcoming by presenting a compelling case that jurisdiction would be unreasonable.") The defendant has not disputed the reasonableness of Puerto Rico as a forum. Thus, no evidence bearing upon the reasonableness or unreasonableness of subjecting Bank One to suit here has been presented.

The five Gestalt factors do not seem to weigh heavily in either direction. Bank One will bear some burden because of the distance it must travel to defend this action. However, Puerto Rico is more convenient for the plaintiff because he lives and works here. Puerto Rico maintains a strong interest in providing effective means of redress for its residents when they have been tortiously injured. Efficient judicial resolution of the controversy is more likely to be available in Puerto Rico. Some, if not all, of defendant's key witnesses will be employees whom Bank One can instruct to attend trial here in Puerto Rico. Plaintiff's witnesses, on the other hand, will not be his employees and they will be beyond the reach of process of the Southern District of Ohio, the most likely alternative forum. Finally, it is unclear whether substantive social policies of Puerto Rico or Ohio will be significantly implicated in this litigation. After balancing the relative significance of each factor

we conclude that defendant has not met its burden of showing that it would be unreasonable to subject him to suit in this jurisdiction. Accordingly, we find that it would not be unfair or unreasonable to exercise personal jurisdiction over Bank One in this suit.

## SUBJECT MATTER JURISDICTION

■ Defendant alleges this court lacks subject matter jurisdiction to adjudicate this controversy. Plaintiff alleges both the existence of a federal question and diversity of the parties as predicates for jurisdiction. Plaintiff's federal question claim is based upon an alleged violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, which imposes upon consumer credit reporting agencies the duty of following reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. Defendant argues that Bank One is not a consumer reporting agency nor has plaintiff claimed that it is. Instead, plaintiff alleges that there is federal jurisdiction because Bank One furnished false information with malice or willful intent to injure a consumer. In *Torres v. JC Penney Company*, 92 JTS 62, the Supreme Court of Puerto Rico held that the FCRA only applies to credit reporting agencies and to consumer information users, therefore a department store's action of providing information to a credit report agency based on its credit records with respect to one of its clients was not covered by federal statute FCRA. In the case before us, Bank One's action is analogous to the department store's action, in that Bank One was providing mistaken credit information to a credit reporting agency with respect to plaintiff. We conclude, therefore, that FCRA does not cover the claim involved in this case. Accordingly, no federal question exists.

■ Defendants also dispute the allegation of diversity. Plaintiff states that he is and was at the time of the filing of the complaint a resident of, and domiciled in, the Commonwealth of Puerto Rico. The complaint and the exhibits presented by

both parties also states Bank One's principal place of business and its state of incorporation is in Columbus, Ohio. The $425,000 claim also satisfies the amount required in a diversity case such as this one. Therefore, plaintiff has shown the existence of diversity of citizenship between the parties.

### SERVICE OF PROCESS

 Defendant requests that the service of process be quashed because it was not properly effected according to Fed. R.Civ.P. 4(d)(3). Bank One is a corporation based in Ohio. Under both, Fed.R.Civ.P. 4(d)(3) and Puerto Rico Rules of Civil Procedure 4.4(e), one way of serving process upon a foreign corporation is to deliver a copy of the summons and the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process. See *Saez Rivera v. Nissan Mfg. Co.,* 788 F.2d 819 (1st Cir.1986); *Precision Etchings & Findings & Inc. v. LGP Gem, LTD,* 953 F.2d 21 (1st Cir.1992). A sworn statement submitted by plaintiff's process server, Thom A. Selhorst, states that he served a certain Stephanie Stevens at defendant's legal department and that she represented herself as authorized to accept service of process. (Plaintiff's Exhibit 1A). At the time the alleged process was served, Bank One did not have an employee by the name Stephanie Stevens as it appears from the affidavit of Andrew Tanner (Defendant's Exhibit C). Apparently the individual's name was Stephanie Saunders and she is not authorized to accept service of process. Thus, plaintiff has failed to comply with Rule 4(d)(3) of the Federal Rules of Civil Procedure in that Stevens is neither an officer, a managing or general agent of Bank One, nor has been appointed or authorized to receive service of process on behalf of Bank One. *See* Affidavit of Cheryl Coffman (Defendant's Exhibit E). Accordingly, the Court hereby ORDERS the service of summons upon Bank One to be QUASHED. Plaintiff is hereby granted a period of forty-five (45) days from the entry of this opinion and order to serve defendant Bank One.

### CONCLUSION

Accordingly, the Court, upon due deliberation, having found that it may exercise personal jurisdiction over defendant, and that subject-matter jurisdiction exists under 28 U.S.C. § 1332, and having granted plaintiff a period of forty-five days from notification of this opinion and order to serve defendant with a summons and copy of the complaint, defendants motion to dismiss is hereby denied.

IT IS SO ORDERED.