Gary CISNEROS, Plaintiff,

v.

TRANS UNION, LLC; et al., Defendants.

No. CIV.03–00200–SPK/LEK.

United States District Court, D. Hawai'i.

Nov. 7, 2003.

David Szwak, Esq., and Mark Clement, Esq., for Plaintiff, Gary Cisneros.

Brad Miller, Esq., for defendant, Equifax Information Services, LLC.

Deborah Wright, Esq., for Experian Information Solutions, Inc.

Theresa Lopez, Esq., for Trans Union, LLC.

M. Elizabeth Raxter, Esq., for Ford Motor Credit Corp, Missan Motor Acceptance Corp., and Verizon Wireless.

Edward Kubo, Jr., Esq., and R. Michael Burke, Esq., for United States Dept. of Defense, Army and Air Force Exchange.

Patricia Nolan, Esq., for Target Corp. f/k/a Retailers National Bank and Dayton Hudson Corp.

Jorge Castillo, Esq., for Western Funding, Inc.

David Minkin, Esq., for United Resource Funding.

Denis Lee, Esq., and Wesley Sakai, Esq., for Providian National Bank.

Wayne Sakai, Esq., for NCO Financial Systems.

John Manaut, Esq., for Fleet Credit Card Services.

James Estes, Jr., Esq., for Central Carolina Bank & Trust.

Paul Hoshino, Esq., for Credit Bureau of the Pacific.

Steven Hisaka, Esq., for Capital One Bank.

ORDER GRANTING DEFENDANTS' WESTERN FUNDING, INC. AND CENTRAL CAROLINA BANK & TRUST COMPANY'S MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

SAMUEL P. KING, District Judge.

## I. INTRODUCTION.

Plaintiff Gary Cisneros ("Plaintiff") brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1684, et seq., asserting federal question and diversity jurisdiction under 28 U.S.C. § 1332, and includes state law claims under supplemental jurisdiction, 28 U.S.C. § 1367. Plaintiff alleges that the various Defendants [1] were responsible for including or not correcting erroneous information or failing to conduct proper investigations regarding disputes on his credit reports. Plaintiff alleges the following causes of action: negligence in the reporting and collection of the disputed accounts, each subsequent reporting and re-reporting, and the handling and reinvestigation of data (Count I); defamation by publishing and disseminating false statements about Plaintiff and damaging his reputation with willful intent to injure (Count II); violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s–2(b) [2] by failing to respond to reinvestigation requests and failing to supply accurate information (Count III); violation of the FCRA, 15 U.S.C. § 1681e[b] [3] by failing to adopt and follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer credit (Count IV); violation of the FCRA, 15 U.S.C. §§ 1681i[5][B][ii], [iii] [4] by re-inserting false information into Plaintiff's consumer reports after having removed the information previously (Count V); violation of the FCRA § 1681i[a] [5] for failing to properly reinvestigate Plaintiff's disputes (Count VI); violation by Defendant NCO of state debt collection practices (Count VII); violation by Defendant NCO of Federal Fair Debt Collection Practices Act (Count VIII). Defendants Central Carolina Bank & Trust Company, National Association aka CCB Financial Corp. and National Commerce Financial Corporation ("Central Carolina") and Western Funding, Inc. ("Western Funding") filed separate motions to dismiss for lack of personal jurisdiction. [6] Fed. R. Civ. Proc. 12(b)(2). For the purposes of this Order, the Court incorporates the arguments by both movant Defendants.

---

1. The list of Defendants include: Trans Union LLC; Credit Bureau of the Pacific, Inc.; Equifax Information Services, LLC; Experian Information solutions, Inc.; Airtouch Cellular aka Cellco Partnership, both doing business as Verizon Wireless; Fleet Credit card Services, a wholly owned subsidiary of Fleet Boston Financial Corporation; United Resource Systems; Western Funding, Inc.; Department of Defense, Army & Air Force Exchange; Capital One Bank aka Capital One Financial Corporation; Dayton Hudson Corporation; Retailers National Bank; NCO Financial Systems, Inc.; Central Carolina Bank & Trust Co., National Association aka CCB Financial Corp., wholly owned subsidiary of National Commerce Financial Corporation; Nissan Motor Acceptance Corporation; Ford Motor Credit Corporation; Providian Financial Corporation aka Providian Bancorp aka Providian Bank.

2. As to Defendants Furnishers–Subscribers [creditor and collector].

3. As to Defendants Consumer Reporting Agencies.

4. As to Defendant Trans Union.

5. As to Defendants Consumer Reporting Agencies.

6. The remaining Defendants, except for the Department of Defense and Retailers National Bank, filed statements of no position to both Central Carolina and Western Funding Inc.'s motions to dismiss for lack of personal jurisdiction.

This matter came on for hearing on November 7, 2003, at 10 a.m. James Estes appeared on behalf of Defendant Central Carolina, Carl Varady appeared on behalf of Defendant Western Funding, and David Szwak, admitted pro hac vice, appeared on behalf of Plaintiff Gary Cisneros.

Because Plaintiff has not met his burden of demonstrating that this court has specific jurisdiction over each Defendant as to each claim, the court grants the motions.

## II. BACKGROUND FACTS

Plaintiff enlisted in the United States Marine Corps in 1991 and went on reserve status in 1995. In February, 1994, Plaintiff took out a car loan from Defendant Central Carolina Bank & Trust Company, National Association in the amount of $5,564.94. Plaintiff states that he made every payment required in a timely and complete manner and paid the loan in full in February, 1997.

In October, 1998,[7] Swift Transportation Co., Inc. ("Swift") hired Plaintiff as a truck driver. Plaintiff was living in Illinois at that time and as part of his employment, he enrolled in a driver's training course with the Professional Driver's Institute ("PDI") which Swift agreed to pay. On October 26, 1998, Plaintiff entered a tuition installment agreement with PDI in the amount of $4,934.10 to be paid in 30 installments commencing on January 10, 1999.

Plaintiff completed the truck driving course and on November 25, 1998, PDI sent him a Notice of Assignment informing him that the installment agreement had been assigned to Defendant Western Funding. Plaintiff began working for Swift and was under the impression that Swift was making tuition payments to Defendant Western Funding for his PDI course. On November 29, 1999, Swift terminated Plaintiff's employment. In August, 2000, Plaintiff reactivated his status with the Marines.

In September, 2000, while attempting to secure credit, Plaintiff discovered that several credit reports reflected that Defendant United Resource Systems was attempting to collect a debt owed to PDI in the amount of $3,623.00. Plaintiff states that in September, 2000, he paid Defendant United Resource in full.

Plaintiff became a resident of Hawaii in March, 2001, when he was transferred by the United States Marine Corps. Beginning in April or May, 2001, Plaintiff began the series of correspondence with various credit reporting agencies disputing items on his credit reports which is the subject of this lawsuit.

In April or May, 2001, Plaintiff applied for credit and services with NextCard and was denied due to derogatory credit items reported by Defendant Trans Union. The Trans Union report indicated that a debt was owed to Defendant Western Funding under the Tuition Installment Agreement and was "charged off" and "Paid by Dealer." Plaintiff contested the Western Funding debt by sending a dispute letter to Defendant Trans Union on April 30, 2001.

The same report stated that a debt owed to Defendant Central Carolina had one payment owed that was 30 days late. On June 12, 2001, Defendant Trans Union provided Plaintiff with another credit report that stated that the Central Carolina debt had one payment that was 30 days late. On September 10, 2001, Plaintiff again sent Trans Union a letter disputing the Central Carolina debt entry. A Sep-

---

**7.** Plaintiff's affidavit states that Swift hired him in October, 1999, however this appears to be a typographical error.

tember 20, 2001 credit report by Defendant Trans Union again stated that the Central Carolina debt had one payment that was 30 days late.

On or about July 17, 2001, Plaintiff applied for credit with Navy Federal Credit Union and was denied credit citing derogatory credit information on a credit report issued by Defendants Equifax and Credit Bureau of the Pacific ("CBOP"). On or about August 31, 2001, Plaintiff received copies of the credit report issued by Equifax and CBOP and found that it reflected that a debt that was owed to Defendant Western Funding, was "60+ days past due," and was "Paid by Dealer." Plaintiff contested these reports and requested an investigation.

On or about July 24, 2001, Plaintiff applied for credit with MBNA Credit Bank and was denied for derogatory credit as reported by Defendant Experian Information Solutions, Inc. ("Experian"). Plaintiff received a copy of the report which reflected that a debt that was owed to Defendant Western Funding, was "60+ days past due," and was "Paid by Dealer as of 12–1999" and also included a statement from Defendant Western Funding that the debt was "Paid by company which originally sold merchandise." The Experian report also stated that the Central Carolina debt was past due 30 days. Plaintiff contested this report and requested an investigation by Experian.

On or about October 10, 2001, Defendants Equifax and CBOP prepared and provided Plaintiff with a credit report including a post-reinvestigation report. That report stated that Defendant Western Funding verified the past debt owed by Plaintiff. On November 13, 2001, Defendants Equifax and CBOP prepared a credit report which stated the same—that the debt owed to Defendant Western Funding had been "Paid by Dealer." On or about November 24, 2001, Plaintiff sent another letter to Experian disputing the credit report.

On November 26, 2001, Experian sent Plaintiff another credit report which included the reinvestigation of the disputed debt. Defendant Experian deleted the entry relating to Defendant United Resource's reporting of the Tuition Installment Agreement, but did not alter the disputed account reporting by Defendant Western Funding. On a credit report by Defendant Experian which Plaintiff accessed on the internet on November 30, 2001, Defendant Western Funding's debt and Defendant Central Carolina's debt were still reported. The report also indicated that there was an investigation pending on the Central Carolina debt.

On or about December 6, 2001, Defendant Experian sent Plaintiff an updated credit report noting that the debt from Defendant Central Carolina Bank was still being investigated.

On or about December 14, 2001, Plaintiff applied for credit with MBNA America Bank and was denied based on Defendant Experian's credit report. A December 29, 2001 credit report by Experian stated that the information was verified by Defendant Western Funding "on 12–2001 and remain unchanged." However, the report also amended the status of the debt owed to Defendant Central Carolina, noting that it was paid and was never late.

On or about May 10, 2002, Plaintiff applied for credit with Sears National Bank and was denied due to derogatory credit on reports by Defendants Equifax and CBOP. The May 10, 2002 credit report by Defendants Equifax and CBOP included the Western Funding debt. Plaintiff contested the derogatory credit reporting of Defendant Western Funding's debt and requested a re-investigation. Plaintiff then filed his complaint in April 2003.

According to his complaint, Plaintiff's correspondence regarding the disputed

debt entries were directed to Defendants Experian, Trans Union, and Equifax and CBOP. Plaintiff does not state that he had direct communications with Defendants Western Funding and Central Carolina throughout this period.

Defendant Western Funding is a California corporation, with its principal place of business in Las Vegas, Nevada. Western Funding purchases installment contracts entered into between consumers and business ("consumer paper"). Western Funding has no offices, property bank accounts, employees or agents in Hawaii. Western Funding has not in the past and does not presently make any sales, purchased consumer paper or otherwise conduct business in Hawaii.

On or about December 1, 1998, Western Funding purchased a contract dated October 26, 1998 entered into between Plaintiff and PDI. Western Funding states that Plaintiff made initial payments but later stopped and defaulted on his performance. In January, 2000, Western Funding reassigned the contract to Career Training Institute (which owned PDI) and relinquished any rights under it. Career Training institute then reassigned the contract to United Resource Systems, a collection agency. Plaintiff paid the balance in September 2000, while he resided in Virginia. Western Funding states that it did not receive any proceeds or benefit from the payment under that contract.

National Commerce Finance Corporation is the present holding company for the entity that was known as Defendant Central Carolina. The Central Carolina loan at issue was made to Plaintiff in February 1994, and was paid in full in 1997. National Bank of Commerce merged with Central Carolina in December 2001 and operates under the trade name "Central Carolina Bank." National Bank of Commerce is a national banking association with its principal place of business in Tennessee and has its headquarters in Memphis, Tennessee, and operational quarters in Durham, North Carolina. National Bank of Commerce has branches in Georgia, North Carolina, South Carolina, Virginia, West Virginia, Tennessee, Mississippi and Arkansas. Defendant Central Carolina has had no dealings with Plaintiff since February 1997. Defendant Central Carolina has never marketed any products or services in Hawaii nor has it directed its services for sale or distribution in Hawaii. Defendant Central Carolina has never been licensed to do business in Hawaii and has no offices or assets in this forum. Defendant Central Carolina has no employees, agents or representatives here and has never maintained a telephone listing or address in Hawaii. Defendant Central Carolina has no corporate records here and has never paid taxes in Hawaii.

## III. STANDARD OF REVIEW

A plaintiff has the burden of establishing personal jurisdiction over a nonresident defendant. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995); *Flynt Distrib., Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir.1984). Even when defendants are jointly liable, a plaintiff must establish personal jurisdiction over each defendant individually. *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990). Moreover, a plaintiff must establish personal jurisdiction over a defendant with respect to each claim. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1289 n. 8 (9th Cir.1977).[8]

---

**8.** However, if the court determines that there has been a sufficient showing of personal jurisdiction to reach trial with regard to one claim, but not another, it may or may not be appropriate to assume jurisdiction over the other claim under principles analogous to the doctrine of pendent jurisdiction. *See Data Disc.*, 557 F.2d at 1289 n. 8.

When, as here, a district court acts on a motion to dismiss without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Ziegler,* 64 F.3d at 473; *Flynt,* 734 F.2d at 1392. If the plaintiff makes such a prima facie showing on the motion to dismiss, the plaintiff must eventually establish the jurisdictional facts by a preponderance of the evidence at either a preliminary hearing or a trial. *Flynt,* 734 F.2d at 1392.

In determining whether a plaintiff has made a prima facie showing of jurisdictional facts, the court must accept uncontroverted allegations in a complaint as true, even if unsupported by any evidence in the record before the court. *See AT & T Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir.1996), *as supplemented by* 1996 WL 490789 (9th Cir. Aug.28, 1996). If the defendant presents evidence to contradict the allegations in the complaint, the plaintiff must go beyond the pleadings and present affirmative proof of personal jurisdiction through affidavits and declarations. *See id.* Conflicts between the parties' affidavits and other discovery materials must be resolved in favor of the plaintiff for purposes of deciding whether a prima facie case for personal jurisdiction exists. *In re Pintlar Corp.,* 133 F.3d 1141, 1144 (9th Cir.), *cert. denied,* 524 U.S. 933, 118 S.Ct. 2334, 141 L.Ed.2d 706 (1998).

## IV. DISCUSSION

The district court must consider two factors before exercising personal jurisdiction over a nonresident defendant in a diversity of citizenship[9] case: "(1) whether an applicable state rule or statute potentially confers jurisdiction over the defendant; and (2) whether assertion of such jurisdiction accords with constitutional principles of due process." *Flynt,* 734 F.2d at 1392; *Miracle v. N.Y.P. Holdings, Inc.,* 87 F.Supp.2d 1060, 1064 (D.Haw. 2000). The "jurisdictional inquiries under state law and federal due process merge into one analysis" when, as here, the state's long-arm statute is "co-extensive with federal due process requirements." *Roth v. Garcia Marquez,* 942 F.2d 617, 620 (9th Cir.1991); *Cowen v. First Ins. Co. of Haw.,* 61 Haw. 644, 649, 608 P.2d 394, 399 (1980) (Hawaii's long-arm statute, Haw. Rev.Stat. § 634–35, was adopted to expand the jurisdiction of Hawaii's courts to the extent permitted by the due process clause of the Fourteenth Amendment). Accordingly, personal jurisdiction over Defendants depends on federal due process requirements.

The Due Process Clause of the United States Constitution protects a person's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The Due Process Clause requires that defendants have "certain minimum contacts with [Hawaii] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154; *Data Disc,* 557 F.2d at 1287. To have had the required minimum

---

**9.** Plaintiff also brings suit under the Federal Credit Reporting Act. "When subject matter jurisdiction is premised on a federal question, a court may exercise specific jurisdiction over a defendant if a rule or statute authorizes it to do so and the exercise of such jurisdiction comports with the constitutional requirement of due process." *AT & T Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 589 (9th Cir. 1996).

contacts, Defendants must have purposefully availed themselves of the privilege of conducting activities within Hawaii, thereby invoking the benefits and protections of Hawaii's laws. *See Asahi Metal Indus. Co. v. Sup. Court of Cal.,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In other words, Defendants' conduct and connection with Hawaii must have been such that they "should reasonably anticipate being haled into court" in Hawaii. *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Requiring "minimum contacts" performs two functions. "It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States[,] through their courts, do not reach out beyond the limits imposed on them by their status as co-equal sovereigns in a federal system." *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 580.

 In applying the requirements of the Due Process Clause, courts have created two jurisdictional concepts—general and specific jurisdiction. A court may exercise general jurisdiction over a defendant when the defendant is a resident or domiciliary of the forum state, or the defendant's contacts with the forum state are continuous, systematic, and substantial. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Data Disc,* 557 F.2d at 1287 ("If the nonresident defendant's activities within a state are 'substantial' or 'continuous and systematic,' there is a sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities."). Plaintiff does not assert that Defendants' contacts with Hawaii were sufficient to confer general jurisdiction over them.

Specific jurisdiction, on the other hand, may be found when the cause of action arises out of a defendant's contact with or activities in the forum state. *See Roth,* 942 F.2d at 620; *Data Disc,* 557 F.2d at 1287. To ensure that the exercise of specific jurisdiction is consistent with due process, this court must be satisfied that the following have been shown:

1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be reasonable.

*Roth,* 942 F.2d at 620–21.

### A. *Purposeful Availment.*

 The purposeful availment requirement protects a defendant from being haled into a jurisdiction merely because of random, fortuitous, or attenuated contacts with the jurisdiction, or because of the unilateral activity of a third person. *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. Jurisdiction is proper when "the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Id.* (quoting *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).

 In examining the purposeful availment requirement, this court analyzes "whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Roth,* 942 F.2d at 621; *see also Gray & Co. v. Firstenberg Mach., Co.,* 913 F.2d 758, 760 (9th Cir.1990). However, the defendant need not have been physically present or have had physical contact with the forum state, so long as the defendant's efforts were "purposefully directed" toward

a forum resident. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.1995)).

 With respect to the claims against Defendants Western Funding and Central Carolina, Plaintiff cannot meet the purposeful availment prong. In *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir.2000), the Ninth Circuit explained that the effects test is satisfied when a defendant "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Id.* at 1087.

To find purposeful availment, *Bancroft* requires "something more" than a foreign act with a foreseeable forum effect. Instead, *Bancroft* requires "express aiming" at the forum state. In this case, after 1997, Plaintiff had no direct contact with Defendant Central Carolina. There are no allegations in Plaintiff's complaint that indicate that Defendant Central Carolina conducted business in a way that was expressly aimed at Hawaii or that there was any expectation that Plaintiff would be harmed in Hawaii. Similarly, Defendant Western Funding's activities were limited to correspondence with the various Defendant credit reporting agencies. Again, Plaintiff does not allege any facts that would constitute purposeful availment by Defendant Western Funding.

Plaintiff cites *Myers v. Bennett Law Offices*, 238 F.3d 1068 (9th Cir.2001) to support his contention that this court should exercise personal jurisdiction over Defendants Western Funding and Central Carolina. In *Myers*, the defendant ordered the credit reports of plaintiffs for improper purposes. The defendant was aware that plaintiffs were residents of the forum state and the Ninth Circuit found that defendant

intentionally aimed its conduct at the forum. 238 F.3d 1068, 1075.

The court finds that this case is distinguishable from *Myers* in that the defendant specifically sought out plaintiffs in obtaining their credit reports and was fully aware that the plaintiffs were residents of the forum. In this case, Defendants Western Funding and Central Carolina ceased contact with Plaintiff long before he took up residence in Hawaii. Furthermore, the court finds that it was not unreasonable for Defendants to report the status of debts to credit agencies, particularly when Plaintiff and the Defendants previously entered into payment contracts.

Plaintiff also cites *Rivera v. Bank One*, 145 F.R.D. 614 (D.P.R.1993) in support of this court finding personal jurisdiction over these Defendants. However, in *Rivera*, the plaintiff, a Puerto Rican resident, corresponded directly with the defendant on more than one occasion. The defendant contacted plaintiff directly regarding the dispute by letter and there were documented attempts to reach the plaintiff by telephone. 145 F.R.D. at 622. The direct correspondence was evidence that the defendant was aware of plaintiff's place of residence and that the disputed credit information could cause injury in that forum.

Again, in this case, Defendants Western Funding and Central Carolina did not correspond directly with Plaintiff and there is no indication that they were aware that Plaintiff resided in Hawaii or that any injury would occur in Hawaii. The notions of fair play and substantial justice would not be served if these Defendants were found to avail themselves to personal jurisdiction in every state each time it reports information as requested by a credit reporting agency.

**B. Arising Out Of**

 The second prong of the personal jurisdiction analysis-causation is de-

termining whether Plaintiff's claims arise out of the Defendants' local conduct. The Ninth Circuit follows the "but for" test. *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir.1995). Plaintiff must show that he would not have suffered an injury "but for" Defendant Western Funding and Defendant Central Carolina's forum-related activity. Because the court finds that there was no forum-related activity on the part of either Defendant, Plaintiff cannot meet this prong.

C. Reasonableness

 The final prong in the personal jurisdiction inquiry is whether the exercise of jurisdiction over these two nonresident Defendants is reasonable. There are seven factors that must all be balanced: (1) the extent of the Defendants' purposeful injection into the forum state's affairs; (2) the burden on the Defendants of defending in the forum; (3) the extent of conflict with the sovereignty of the Defendants' home states; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to Plaintiff's interests in convenient and effective relief; and (7) the existence of an alternative forum. *See Core–Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1487–88 (9th Cir.1993).

Given the indication that neither Defendant targeted their contacts to anyone in Hawaii, and that Hawaii was not the focal point of Defendants' activities, and weighing the above factors equally, it would be unreasonable for this court to subject Defendants Western Funding and Central Carolina to personal jurisdiction in this forum.

By responding to communications from various credit reporting agencies regarding Plaintiff's credit status, Defendants Western Funding and Central Carolina could not have "reasonably anticipate[d]

being haled into court" in Hawaii. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 580 (citations omitted).

V. CONCLUSION

For these reasons, Defendant Western Funding and Defendant Central Carolina's motions to dismiss for lack of personal jurisdiction are GRANTED.

IT IS SO ORDERED.