John CUMMINGS, a shareholder of Caribe Marketing & Sales Company, Inc., suing in the right of Caribe Marketing & Sales Company, Inc., Plaintiff,

v.

CARIBE MARKETING & SALES COMPANY, INC., Manuel Fernandez Barroso, Jane Doe and Standard Commercial Corporation, Defendants.

Civil No. 96–1647 (JP).

United States District Court,
D. Puerto Rico.

April 1, 1997.

---

Santiago F. Lampón González, Guaynabo, PR, for Plaintiff.

Herman W. Colberg, San Juan, PR, Ramón Lloveras Otero, San Juan, PR, Raúl Dávila Rivera, San Juan, PR, for Defendants.

### ORDER

PIERAS, District Judge.

## I. INTRODUCTION AND BACKGROUND

The Court has before it (1) codefendant Standard Commercial Credit Corporation's ("Standard") Motion to Dismiss Based on a Forum Selection Clause (**docket No. 22**); (2) Standard's Motion to Dismiss for Lack of Personal Jurisdiction (**docket No. 26**); (3) plaintiff John Cummings' Memorandum of Law in Opposition to Standard Commercial Corp.'s Motion to Dismiss Complaint (**docket No. 35**); (4) codefendant Fernández–Barroso's Motion for Adjournment by Consent of All the Parties (**docket No. 36**); and (5) codefendant Standard's motion to Reply to Cummings' Opposition (**docket No. 40**). The Court hereby **GRANTS** the last of these motions, Standard's motion under Rule 311.7 of the Local Rules to reply to Cummings' opposition (**docket No. 40**)—the Court will consider Standard's surreply. The plaintiff has not responded to Standard's motion to dismiss for want of personal jurisdiction, so the Court will render its decision on that matter without the benefit of the plaintiff's input.

The following factual allegations are taken from various submissions made by both parties. They are not findings of fact, and to the extent any statement of alleged fact is disputed, the Court herein makes no opinion regarding such dispute. However, wherever the Court relies on any fact, that fact has not been disputed. This shareholder derivative suit was commenced by John Cummings, owner of fifty percent (50%) of the stock of Caribe Marketing & Sales [1], against Manuel Fernández Barroso [2], his wife ("Jane Doe"), and Standard [3] based on a series of financial transactions. Specifically, the complaint asserts that on or about June 16, 1992, Caribe entered a credit agreement with Crestar Bank that provided Caribe with access to $750,000.00 in credit. Standard executed a guaranty agreement to assure Crestar of Caribe's payment to Crestar. Under the arrangement [4], when a letter of credit came due, Standard was obliged to repay the debt to Crestar. The parties to the contract were Standard, Caribe, Fernández–Barroso, CBF Financial Group ("CBF") [5] and John Cummings. To secure Standard's payments on its behalf, Caribe executed a Promissory Note, a Master Demand Note, and a mortgage.

In March 1993, Caribe was unable to pay Standard for payments made by Standard to Crestar under the credit agreement. Standard refused to make further payments without additional collateral. According to Cummings, he negotiated with Standard that approximately $300,000.00 in collateral would be pledged by his father, Lester Cummings, and Standard approved new lines of credit totaling $225,000.00, for an aggregate line of credit of $975,000.00. The plaintiff alleges that, as part of the pledge agreement between Caribe and Standard, the parties expressly agreed that the maximum credit to be extended to Caribe by Standard could not exceed $975,000.00. According to his Com-

1. Caribe is a corporation organized and existing under the laws of Puerto Rico. Caribe is primarily engaged in the business of selling and distributing toys, household articles and school supplies. According to Cummings, he and Fernández–Barroso each own fifty percent (50%) of Caribe, but Fernández–Barroso is on the board of directors, controls operations, and controlled the board.

2. Fernández–Barroso is a citizen of Puerto Rico and is allegedly a fifty percent (50%) owner of Caribe.

3. Standard is a corporation existing and operating under the laws of North Carolina with its principal place of business in North Carolina.

4. The arrangement, composed of several contracts and agreements, comprises the mechanism by which Crestar extended credit to Caribe based on Standard's guaranty.

5. John Cummings owns and runs CBF, a corporation existing and operating under the laws of the State of Virginia. CBF is only peripherally implicated by the facts relevant to this case.

plaint, Cummings was thereafter excluded from all of Caribe's financial affairs, and Fernández–Barroso allowed Standard to control Caribe corporation. Cummings alleges that Standard used its control to the detriment of Caribe.

The principal argument stated by the plaintiff is that Standard and Fernández–Barroso, in violation of the contractual and fiduciary duties they owed to Caribe, allowed Caribe's obligations under the credit agreement to increase to over $1.5 million dollars by October, 1993, up from just over $875 thousand in September, 1993. Cummings argues that if Standard and Fernández–Barroso had not permitted the debt under the credit agreement to exceed $975,000.00, Caribe would have paid off its obligations. Cummings sues Standard, on behalf of Caribe, seeking damages arising from Standard's breach of contract and breach of fiduciary duty, and seeking declaratory relief that the credit agreement, promissory notes, and mortgage are all unenforceable. He sues Barroso, also on behalf of Caribe, for breach of a fiduciary duty, breach of contract, waste, contribution, and indemnification.

Only codefendant Caribe, not mentioned in the allegations of the complaint, has filed an answer in this action. Standard has filed the two motions to dismiss that are the subject of this order. Fernández–Barroso and his wife have failed to file any answers.

## II. FORUM SELECTION CLAUSE

■ Standard moves the Court to dismiss this action based on certain clauses in the Promissory Note, the Master Demand Note, and the Guaranty Agreement. The clauses, Standard argues, constitute and embody a forum selection agreement that this Court should enforce. For the reasons given below, the Court disagrees with Standard. Therefore, Standard's Motion to Dismiss Based on a Forum Selection Clause (**docket No. 22**) is hereby **DENIED**.

The clauses invoked by Standard in its motion read as follows. The Promissory Note contains the following clause:

"7. *Governing Law.* The Borrower agrees that this Note is, and shall be deemed to be a contract entered into, under and pursuant to the laws of the State of New York and shall be in all respects governed, construed, applied, and enforced in accordance with the laws of said state; and no defense given or allowed by the laws of any other State or Puerto Rico shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of New York. The Borrower agrees to submit to personal jurisdiction in the State of New York in any action or proceeding arising out of or related to this Note."

The Master Demand Note contains the following clause:

· "This note and all borrowings hereunder shall be governed by the laws of the State of New York."

The Guaranty Agreement contains the following clause:

"8. This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New York and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said State; and no defense given or allowed by laws of any other State or Puerto Rico shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of New York. The undersigned each agrees to submit to personal jurisdiction in the state of New York in any action or proceeding arising out of or relating to this guaranty."

From these clauses, Standard concludes that this case is governed by a forum-selection clause. Standard dedicates most of its briefs to making and pressing the argument that courts should enforce forum-selection clauses. The plaintiff does not dispute Standard's arguments with respect to the enforceability of mandatory forum-selection clauses.[6] The Supreme Court and most states have con-

6. For this reason, and because we determine that the clauses at issue are not mandatory forum-selection clause, the Court does not need to determine whether federal or state law applies, and if the latter, which state's law would govern.

doned the enforcement of forum selection clauses. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *see Lambert v. Kysar*, 983 F.2d 1110, 1117 (1st Cir.1993) ("a more receptive view toward forum selection clauses ... appears to accord with the view adopted by most other state courts"). The plaintiff instead insists that the clauses at issue in Standard's motion to dismiss are not mandatory forum-selection clauses. We agree with the plaintiff.

The Court looks first to the plain language of the contracts in divining their meaning. *Cf. Wickman v. Northwestern Nat. Ins. Co.*, 908 F.2d 1077, 1084 (1st Cir.1990) ("applying the basic tenets of contract interpretation, the first place to look for a definition is in the terms of the policy contract itself ... These terms must be given their plain meanings; meanings which comport with the interpretations given by the average person"); *cf. Challenger Caribbean v. Union General de Trabajadores de Puerto Rico*, 903 F.2d 857, 861 (1st Cir.1990) ("The arbitrator may not ignore the plain language of the contract. If the language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement") (quoting *United Paperworkers' Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987)).

In looking at the plain language of the clauses before us, the Court can identify two distinct clauses—a choice-of-law clause, and a clause waiving personal jurisdiction defenses. Neither of these constitutes a choice-of-forum agreement.

The easiest to dispose of are the choice-of-law clauses that appear in each of the three provisions cited by the movant. A choice of law clause is "[a] contractual provision wherein the parties designate the state whose law will govern disputes arising out of their agreement." Black's Law Dictionary 241 (6th ed.1990). Due to the difficulties that often arise in the determination of which state's law should govern a contract, parties often seek to make the determination for themselves in order to prevent confusion and protect expectations. Modern conflict-of-laws theories accept parties' choice as the primary determinant of which law governs a contract. *See e.g.* Restatement (Second) of Conflict of Laws § 187 (1989). However, there is nothing in the plain language of the choice-of-law clauses at issue in this case that determines the forum for hearing disputes. The clauses merely state that New York law governs any disputes arising under the contracts, not that any such disputes must be heard exclusively in New York fora. Moreover, the Court cannot infer from the choice-of-law clauses a determination that would restrict disputes arising from the contracts to a particular forum. Nothing prevents this Court from making determinations based on state law—in fact, diversity jurisdiction demands it. *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Therefore, the Court holds that the full meaning of the choice-of-law clauses is encompassed in their plain language, and, as nothing in their plain language indicates an exclusive choice of forum, those clauses are unavailing as support for Standard's argument.

The other aspect of the clauses on which Standard bases its motion is only slightly more problematic. Two of the clauses cited by Standard, in addition to containing choice-of-law provisions, also incorporate the stipulation that Caribe "agrees to submit to personal jurisdiction in the State of New York in any action or proceeding arising out of or related to this" contract. Again, nothing in the language of these clauses orders the parties to resolve their disputes in a particular forum; nor can such an order be inferred.

Several courts have construed similar provisions as merely "permissive" and not mandatory. As the United States Court of Appeals for the Fifth Circuit stated, "before determining whether a forum section clause is mandatory and thus enforceable under the *M/S Bremen* line of cases, we must determine whether we are here presented with a mandatory forum selection clause or merely a permissive one." *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir.1994). Relying on *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir.1974), the court in *Caldas & Sons* determined that a clause providing that "[t]he law and the courts of

Zurich shall be applicable," was permissive and not mandatory. In *Keaty*, the same court had determined that a clause providing that "this agreement shall be ... enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York" was also permissive.

Recently, the First Circuit found that a provision stating that the "borrower and the guarantors each hereby expressly submits to the jurisdiction of all Federal and State courts located in the State of Florida" did not dictate the forum. *Redondo Construction Corp. v. Banco Exterior De Espana, S.A.,* 11 F.3d 3, 5–6 (1st Cir.1993). The court of appeals reasoned that "[a]ffirmatively conferring Florida jurisdiction by consent does not negatively exclude any other proper jurisdiction," noting "a total difference between expressly and exclusively." *Id.* at 6 (citing *Hunt Wesson Foods, Inc. v. Supreme Oil Co.,* 817 F.2d 75, 77 (9th Cir.1987)). Similarly in *Hunt Wesson,* the Ninth Circuit addressed the following clause:

> "Buyer and Seller expressly agree that the laws of the State of California shall govern the validity, construction, [and] interpretation ... of this contract. the courts of

California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract."

817 F.2d at 76. The *Hunt Wesson* court found that clause, almost identical to the one at issue in the case at bar, to be permissive, holding that:

> "[a]lthough the word 'shall' is a mandatory term, here it mandates nothing more than that the Orange county courts have jurisdiction. Thus, [the appellant] cannot object to litigation in the Orange County Superior Court on the ground that the court lacks personal jurisdiction."

*Id.* at 77.

■ The Court finds that the clauses cited by Standard constitute permissive clauses, the purpose of which is not to select an exclusive forum, but to waive objections on the grounds that New York courts lack personal jurisdiction. As we have shown, Courts construing similar clauses have universally reached the same conclusion.[7] Standard has not provided the Court with any basis for disagreeing with the interpretations given by other courts to clauses nearly identical to the ones at issue in this motion.[8]

7. The Court notes two possible reasons for the conclusion that such clauses cannot be considered mandatory. First, although enforceable, forum selection clauses have generally been disfavored by American courts. *M/S Bremen,* 407 U.S. at 6, 92 S.Ct. at 1911. Notwithstanding *M/S Bremen,* which overruled a long line of cases holding that "agreements in advance of controversy whose object is to oust the jurisdiction of the courts are contrary to public policy and will not be enforced," courts are still reluctant to enforce such clauses unless clearly indicative of an unambiguous intent that controversies be litigated exclusively in a particular forum. Second, and perhaps more importantly, nearly every court addressing the issue has relied on the principle of *contra preferentem,* which requires that, in connection with the construction of a written document, an ambiguous provision is construed most strongly against the person who selected the language. The movant in this action has not alleged that Caribe selected the language of the clauses the movant has cited in support of its argument; likewise, the respondent has not addressed the issue. The Court is not concerned however, because we need not rely on the concept of *contra preferentem* in reaching the conclusion that the clauses are not mandatory. The movant bears the burden of proving that the

court lacks jurisdiction due to a contractual provision. The movant here relies on the plain language of three clauses to support the proposition that the parties selected New York as the exclusive forum for resolving disputes under their contracts. The Court, however, is not persuaded by the plain language that it is more likely than not that the parties intended New York to be the exclusive forum for resolving disputes under their contracts.

8. By way of contrast, two provisions which have been interpreted as mandatory forum-selection clauses read as follows. In *Lambert v. Kysar,* the First Circuit addressed the following clause:

> "The terms and conditions of the order documents applicable to this transaction shall be interpreted under the case and statutory law of the State of Washington. In the event any action is brought to enforce such terms and conditions, venue shall lie exclusively in Clark County, Washington."

983 F.2d 1110 (1st Cir.1993). The interpretation of this clause as a mandatory forum selection device was not disputed, and the Court considered it as such without analysis. In *Banco Popular de Puerto Rico v. Airborne 'Group' PLC,* 882 F.Supp. 1212 (D.P.R.1995), the Court held the

Therefore, the Court **DENIES** Standard's Motion to Dismiss Complaint Based on Forum–Selection Clause.

## III. LACK OF PERSONAL JURISDICTION

Codefendant Standard has also moved this Court, under Federal Rule of Civil Procedure 12(b)(2), to dismiss Cummings' claims as against Standard because this Court has no personal jurisdiction over Standard. Specifically, Standard argues that it is a North Carolina corporation not licensed to do business in Puerto Rico and not doing business in Puerto Rico. Moreover, Standard's reasoning continues, its relationship to Puerto Rico consists only of some financial agreements with Cummings, Caribe, and Fernández–Barroso by which Standard served as guarantor of some credit extended by Crestar to these parties. Standard concludes by reasoning that, because this relationship was "static," not "systematic and continuous," it cannot serve as the basis for this Court's exercise of jurisdiction over Standard. The Court disagrees.

Our analysis begins with Puerto Rico's long arm statute, for "a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." *Ticketmaster–New York v. Alioto,* 26 F.3d 201, 204 (1st Cir.1994) (citing *General Contracting & Trading Co. v. Interpole, Inc.,* 940 F.2d 20, 23 n. 4 (1st Cir.1991)); *Toledo v. Ayerst–Wyeth Pharmaceutical, Inc.,* 852 F.Supp. 91, 101–102 (D.P.R.1993). Puerto Rico's long-arm statute, in pertinent part, reads:

4.7 Service on a person not domiciled in Puerto Rico (a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:

(1) Transacted business in Puerto Rico personally or through his agent; or

(2) Participated in tortious acts within Puerto Rico personally or through his agent;"

32 L.P.R.A.App. III R. 4.7. If the Court finds that Puerto Rico's long-arm statute would confer jurisdiction in this case, the analysis turns to the constitutionality of this Court's exercise of that jurisdiction. *See Ticketmaster–N.Y.,* 26 F.3d at 206–212.

The question of whether subjecting defendants to *in personam* jurisdiction under the long arm statute of Puerto Rico is in accord with constitutional precepts must be decided under federal law, while the scope of the long-arm statute must be decided under Puerto Rico law. *W. Clay Jackson Enterprises v. Greyhound Leasing,* 431 F.Supp. 1229 (D.P.R.1977). Puerto Rico's long arm statute permits the exercise of jurisdiction to the full extent of constitutional authority. *Mangual v. General Battery Corp.,* 710 F.2d 15, 19 (1st Cir.1983); *Viacom International, Inc. v. Three Star Telecast, Inc.,* 639 F.Supp. 1277, 1279 (D.P.R.1986) (citing *A.H. Thomas Co. v. Superior Court,* 98 P.R.R. 864, 870 n. 5 (1970)). Thus, as the *Viacom* court put it, "the inquiry into the requirements for state law jurisdiction is telescoped into the due process analysis.'" 639 F.Supp. at 1279 (quoting *Dalmau Rodríguez v. Hughes Aircraft Co.,* 781 F.2d 9, 12 (1st Cir.1986)).

In considering the constitutional realm of the exercise of personal jurisdiction in this action, we are guided by the familiar litany of Supreme Court decisions that construct the boundaries to that realm, beginning with *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). We quote Judge Selya's opinion in *Ticketmaster–NY:*

"a party wishing to validate a court's jurisdiction must show that 'minimum contacts'

---

following clause to be a clear and unambiguous forum selection clause:

"The Agreement shall be governed by and construed in accordance with the laws of England and disputes hereunder or as to the construction of this Agreement shall be resolved in the Courts of England."

It requires no great analysis to distinguish the unequivocal language in these clauses, which are directed squarely to an exclusive location for resolution of conflicts, from the language in the clauses at issue in the case at bar, which are directed toward acceptance of personal jurisdiction.

exist between the defendant and the forum state." *International Shoe* [, 326 U.S. at 316, 66 S.Ct. at 158]. To establish minimum contacts on a theory of specific jurisdiction, a plaintiff must first demonstrate that its cause of action 'arises out of, or relates to' defendant's contacts with the forum state[.] *Helicópteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Then, the plaintiff must demonstrate the deliberateness of the defendant's contacts, or, phrased another way, that the defendant 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.' *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

Even if a plaintiff succeeds in making these two showings, it is not home free. The defendant may nonetheless avoid having to defend in a strange place if it can establish that allowing the suit to go forward would be inconsistent with 'fair play and substantial justice.' *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160."

26 F.3d at 206. Under this test, the Court has no problem holding that its exercise of jurisdiction over codefendant Standard in this action satisfies the due process clause of the Constitution based on *International Shoe*'s "minimum contacts" test.

Cummings' claim against Standard arises out of and relates to the financing agreements under which Crestar extended credit to Caribe, and Standard agreed to guaranty that credit. These agreements, including the credit agreement signed by Standard, Crestar, and Caribe, the guaranty by which Standard pledged its guaranty on behalf of Caribe, and the promissory note, master demand note, and mortgage agreed to by Caribe and Standard, all constitute contacts made between Standard and Puerto Rico. Caribe and one of its owners and principals, Fernández Barroso, are both citizens of Puerto Rico. The money (credit) forming the subject matter of that agreement was being given, sent, and extended in Puerto Rico to Caribe, a company doing its entire business in Puerto Rico. The subject matter of the mortgage securing Caribe's obligations to Standard was real property in San Juan, Puerto Rico.

The constitutional jurisprudence lends no relevance to the fact that these agreements constitute but the sole contact between Standard and the forum state. We find *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) instructive. In *McGee,* the Court held that California properly exercised jurisdiction over a Texas insurance company that had assumed the obligation of an Arizona company to insure the life of a California resident. The evidence failed to show that the Texas company had ever maintained an office or agent in California or had ever solicited or conducted any insurance business in California other than maintaining the policy at issue. *Id.*

The facts of this case are nearly identical. Much the same as the Texas insurance company in *McGee,* the movant acted as the guarantor of a line of credit held by a Puerto Rican corporation. The contract created an obligation of a continuous nature, much like the life insurance policy in *McGee.* Verily, the set of contracts giving rise to this action might be considered a single contact, but as the *McGee* Court held, "it is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." *Id.* at 223, 78 S.Ct. at 201. Although this case does not involve an insurer failing to pay a claim, as in *McGee,* the Court has no doubt that Puerto Rico "has a manifest interest in providing effective means of redress for its resident when their insurers refuse" to meet any contractual obligation. That is the case here— Cummings, on behalf of Caribe, a Puerto Rican corporation, is suing Standard for its failure to discharge its contractual obligations to Caribe.

As to the second part of the standard set forth in *Ticketmaster–NY,* in accord with *Hanson v. Denckla,* the Court holds that Standard "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240. Standard knowingly contracted with a Puerto Rican corporation.

It guaranteed the corporation's credit, lent money to the corporation, and collected repayment for that money that it lent to the corporation. Importantly, it also secured Caribe's obligations to it with a promissory note, a master demand note, and a mortgage on real property in Puerto Rico. In contracting with a corporation existing under the laws of Puerto Rico, in demanding repayment of monies lent to that Puerto Rican corporation, and in securing its transactions with notes from that corporation and a mortgage on real property in Puerto Rico, Standard certainly availed itself of the privilege of conducting business in Puerto Rico and invoked the protections of Puerto Rico law. In arriving at this conclusion, we must consider the "two cornerstones of purposeful availment," *Ticketmaster–NY*, 26 F.3d at 207, which are foreseeability, *id.; see also World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), and voluntariness. *Id.; see also Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985).

The foreseeability "cornerstone" attempts to protect persons from being haled into court in jurisdictions where they could not reasonably have foreseen being subject to the court's authority. *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567 ("the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there"). It takes no analysis to determine that a defendant that has contracted to guaranty a Puerto Rico corporation's credit in return for repayment obligations from that corporation secured by a mortgage on real property in Puerto Rico and certain notes given by that corporation must foresee being haled into court in Puerto Rico, particularly where the contracts have no forum selection clause as we have determined the situation to be here.

The voluntariness "cornerstone" attempts to protect defendants from being haled into court in a jurisdiction in which it has contacts when those contacts are the result of "[t]he unilateral activity of those who claim some

relationship with a non-resident defendant." *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239. In other words, the defendant must have intended to do the act that made the contact. Here, the voluntariness concern is non-existent—the defendant has not argued, and the Court cannot see how such an argument could even be advanced, that it did not enter into its transactions with Caribe voluntarily.

■ As a final matter, the Court holds that allowing this suit to go forward would not be inconsistent with 'fair play and substantial justice.' *Ticketmaster–NY*, 26 F.3d at 206 (quoting *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160). In considering the "fairness of subjecting a nonresident to the authority of a foreign tribunal," we are instructed to keep five factors in mind—"(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Ticketmaster–NY*, 26 F.3d at 209 (setting forth what it terms the "Gestalt factors"). The two interests most clearly implicated in this action are covered by Gestalt factors one and two, and the Court cannot see how factors three, four, and five are served or impaired by this Court's exercise of, or refusal to exercise, *in personam* jurisdiction. Moreover, in evaluating the Gestalt factors, the Court's decision must take into account the closeness of the Court's decision regarding minimum contacts. In other words, where the facts clearly demonstrate that the defendant had "minimum contacts" with the forum and "purposely availed itself of the privilege of conducting its activities in the forum state, thus invoking the protection of its laws," the Court should be more willing to find that haling that defendant into court in that forum does not contravene notions of "fair play and substantial justice."

■ Balancing the two relevant Gestalt factors, the Court finds that Puerto Rico's interest in adjudicating this dispute far exceeds the defendant's burden of appearing in

this forum. Puerto Rico certainly has a demonstrable interest in protecting its citizens from injuries resulting from a non-resident's breach of a contractual obligation.[9] *Cf. McGee,* 355 U.S. at 223, 78 S.Ct. at 201 (forum state "has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims"). Against Puerto Rico's obvious and substantial interest in providing a forum and means of redress for its citizens when they face a contractual dispute, Standard's burden in appearing here cannot be considered as consequential, particularly in light of Standard's clearly voluntary activities that foreseeably led to this action. As the *McGee* court noted, in 1957:

> "Today, many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

*McGee,* 355 U.S. at 222–223, 78 S.Ct. at 201. Nearing the fortieth anniversary of *McGee,* we believe that technological advancements in transportation and communication over the past four decades have only made litigation in foreign jurisdictions less burdensome. Therefore, the Court holds that it has personal jurisdiction over Standard and hereby **DENIES** Standard's motion to dismiss for lack of personal jurisdiction.

## IV. MANUEL FERNANDEZ BARROSO'S MOTION FOR CLARIFICATION

In his Motion for Adjournment by Consent of All the Parties, Fernández–Barroso sought clarification of the Court's Order denying his request for a non-resident bond. As the Court clearly stated in its November 22, 1996 Order, Fernández–Barroso's request was denied. Mr. Cummings has not been ordered by the Court to submit any additional bond above and beyond the one he has already posted in this action for $250.00. As the Court also noted in its Order, should evidence come to light at a later point in the proceedings that persuades the Court to amend this Order, the Court will do so.

IT IS SO ORDERED.

---

9. In considering Puerto Rico's interest, we do not "correlate the strength or weakness of [Cummings'] case on the merits with the strength or weakness of the forum state's interest in this regard." *Ticketmaster–NY,* 26 F.3d at 211.