Zacarías de la ROSA, Teostita Guilamo, and their conjugal partnership, Plaintiffs,

v.

PHILIP MORRIS PRODUCTS, INC., R.J. Reynolds Tobacco Co., John Doe and Richard Roe Insurance Companies, Defendants.

Civil No. 97–1335 (PG).

United States District Court, D. Puerto Rico.

Aug. 14, 1997.

Godwin Aldarondo–Girald, Hato Rey, PR, for Zacarias de la Rosa, Teostita Guilamo.

Manuel A. Guzmán, San Juan, PR, for Philips Morris Products.

Salvador Antonetti & Heriberto Burgos–Pérez, San Juan, PR, for R.J. Reynolds.

### *OPINION AND ORDER*

PEREZ–GIMENEZ, District Judge.

### I. Background

Plaintiff is a citizen of the Dominican Republic and a legal resident of the Commonwealth of Puerto Rico. He began smoking at age fifteen in his native Dominican Republic, mostly Marlboro and occasionally Winston brand cigarettes. In 1989, at the age of 47, Plaintiff moved to the island of Antigua, where he quit smoking. He then moved to Puerto Rico in 1992 and in April 1996 was diagnosed with lung cancer. On March 10, 1997, Plaintiff filed suit against Codefendants Philip Morris Products, Inc. (PM), and R.J. Reynolds Tobacco Co. (RJR)[1] for alleged tortious acts that caused Plaintiff's lung cancer. Codefendants do not address the allegations; rather, they seek dismissal of the claim on procedural grounds, Fed.R.Civ.P. 12(b)(1), (2), (4) and (5).

The Court has before it (1) PM's Motion to Dismiss for Lack of Personal Jurisdiction and/or Motion to Quash Service of Process (docket no. 12); (2) RJR–DE/PR's Motion to Dismiss for Lack of Subject Matter Jurisdiction (docket no. 13); (3) RJR–NJ/NC's Motion to Dismiss for Lack of In Personam Jurisdiction, for Insufficiency of Process and Service of Process (docket no. 14); and (4) Plaintiff's Motion requesting Additional Summons (docket no. 18). The Court hereby **GRANTS** Codefendant RJR–DE/PR's Motion to Dismiss. As indicated by their pleadings, both parties agree to the dismissal of the claims against RJR–DE/PR for lack of diversity jurisdiction.

The Court will render its decision on the issue of personal jurisdiction in the following discussion. This issue is dispositive; therefore, the Court need not address the issues of service of process or subject matter jurisdiction.

### II. Discussion

 In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists over the nonresident defendant. *Sawtelle v.*

*Farrell,* 70 F.3d 1381, 1387 (1st Cir.1995); *Ticketmaster–New York Inc. v. Alioto,* 26 F.3d 201, 207 (1st Cir.1994). To meet its burden, a plaintiff must make a prima facie showing that the court may exercise jurisdiction based on specific facts alleged in submitted pleadings, affidavits, and exhibits. *Ealing Corp. v. Harrods, Ltd.,* 790 F.2d 978, 979 (1st Cir.1986); *Rivera v. Bank One,* 145 F.R.D. 614, 616 (D.P.R.1993). The district court considers only whether the plaintiff has proffered evidence that, if credited, is sufficient to support facts authorizing personal jurisdiction over the nonresident defendant under both the forum's long-arm statute and the Due Process Clause of the United States Constitution. *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671, 675 (1st Cir.1992); *USS Yachts, Inc. v. Ocean Yachts, Inc.,* 894 F.2d 9, 11 (1st Cir.1990). The prima facie showing of personal jurisdiction, however, must be based on evidence that goes beyond the pleadings. *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir. 1995); *Rivera,* 145 F.R.D. at 617. "The plaintiff ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts." *Foster–Miller,* 46 F.3d at 145. In determining whether a nonresident defendant is subject to its jurisdiction, a federal court asked to exercise diversity jurisdiction "is the functional equivalent of a state court sitting in the forum state." *Ticketmaster,* 26 F.3d at 204; *see also General Contracting & Trading Co. v. Interpole, Inc.,* 940 F.2d 20, 23 n. 4 (1st Cir.1991). "The court must, therefore, find sufficient contacts between the defendant and the forum [from plaintiff's proffered evidence] to satisfy the state's long-arm statute and the Fourteenth Amendment's Due Process Clause." *Sawtelle,* 70 F.3d at 1387; *see Ticketmaster,* 26 F.3d at 204.

### A. Puerto Rico's Long–Arm Statute

In diversity cases, a district court must apply the law of the state in which it sits. Thus, the courts' power to assert personal jurisdiction is governed by the state's long-

---

1. R.J. Reynolds has two legal entities involved in the case. "RJR–DE/PR" is RJR incorporated in Delaware with its principal place of business in Puerto Rico; "RJR–NJ/NC" is RJR incorporated in New Jersey with its principal place of business in North Carolina.

arm statute. In *Sawtelle,* the Court of Appeals for the First Circuit reiterated the well-established principle that a forum's long-arm statute limits a federal court's exercise of personal jurisdiction over a nonresident defendant. *See American Express Int'l, Inc. v. Mendez–Capellan,* 889 F.2d 1175 (1st Cir. 1989). The scope of Puerto Rico's long-arm statute must be decided under Puerto Rico law. When a statute seeks to subject nonresident defendants to personal jurisdiction in Puerto Rico, federal law must be used to decide if the statute is in accordance with constitutional precepts.

Puerto Rico's long-arm statute reads, in pertinent part:

R4.7 *Service on a person not domiciled in Puerto Rico*

(a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:

(1) Transacted business in Puerto Rico personally or through an agent; or

(2) Participated in tortious acts within Puerto Rico personally or through his agent.

P.R. Laws Ann. tit. 32, app. III, R.4.7(a)(1) and (2) (1983). The construction of Puerto Rico's long-arm statute has been difficult for both courts and lawyers. The statutory language directly states that the courts of Puerto Rico can exercise jurisdiction "over said person if the action or claim arises because said person (1) transacted business in Puerto Rico ... or (2) participated in tortious acts within Puerto Rico." The diction used by the Puerto Rican legislature seems to indicate that the intent of Rule 4.7 may be to provide only for specific personal jurisdiction to be exercised by the courts.

■ The exercise of general personal jurisdiction, however, may be discussed in view of the seminal case of *A.H. Thomas Co. v. Superior Court,* 98 P.R.R. 864, 870 n. 5 (1970) and subsequent federal cases. These cases have extended the reach of Rule 4.7 to all cases where it is constitutionally permissible. *Mangual v. General Battery Corp.,* 710

F.2d 15, 18–20 (1983); *Vencedor Mfg. Co., Inc. v. Gougler Indus.,* 557 F.2d 886, 889 (1st Cir.1977); *Viacom Int'l v. Three Star Telecast,* 639 F.Supp. 1277, 1279 (D.P.R.1986).

The *Viacom* court stated that "the inquiry into the requirements for state law jurisdiction is telescoped in the due process analysis." 639 F.Supp. at 1279. The court was explaining that the reach of a state's long-arm statute should be evaluated through a proper due process analysis. This suggests that jurisdiction may be pushed to its constitutional limits even in light of the state's long-arm statute's language.

**1. Interpretation of Rule 4.7**

To interpret Puerto Rico's long-arm statute, the Court "must look at its language, history and at its construction by the Supreme Court of Puerto Rico." *Rivera,* 145 F.R.D. at 619 (citing *Davila–Fermin,* 738 F.Supp. 45, 48–49 (1990)); *Colon v. Gulf Trading Co.,* 609 F.Supp. 1469, 1477 (D.P.R. 1985). This Court, however, acknowledges that the interpretation of subsection (a)(2) of Rule 4.7 has never been before Puerto Rico's Supreme Court. *Rubi v. Sladewski,* 641 F.Supp. 536, 538 (D.P.R.1986). The court in *Davila–Fermin* noted, however, that the "legislative history of the rule suggests a liberal interpretation of the terms contained in its express language." 738 F.Supp. at 48; *Colon,* 609 F.Supp. at 1476.

The Supreme Court of Puerto Rico has provided a liberal interpretation of the only subsection it has construed, (a)(1). *See A.H. Thomas,* 98 P.R.R. at 870 n. 5 (the term "business transaction within Puerto Rico" was held to include mere act of sending mail to Puerto Rico from another jurisdiction); *Medina v. Tribunal Superior,* 104 D.P.R 346, 356 (1975) (the term "business transaction" broadly defined).

■ The United States Court of Appeals for the First Circuit has suggested reading Rule 4.7(a)(2) as permitting the exercise of jurisdiction over defendants who avail themselves of the laws and benefits of Puerto Rico and commit tortious acts within or without the Commonwealth that defendant knows or reasonably should have known will cause in-

jury within Puerto Rico. *Mangual*, 710 F.2d at 19. Yet, the Court believes that the statutory construction of Rule 4.7 is a matter for the Commonwealth courts, as the First Circuit expressed in *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 908 n. 3 (1st Cir.1980) (not disagreeing that Rule might be interpreted to authorize jurisdiction over nonresident defendants who commit torts outside Puerto Rico with effects felt within island). The Court, however, believes that the liberal interpretation of subsection (a)(1) by the Supreme Court of Puerto Rico intimates that a similar construction may be given to subsection (a)(2).

Presently, Plaintiff stipulates by deposition that he smoked Marlboro and Winston brand cigarettes while living in the Dominican Republic and Antigua. The deposition indicates that Plaintiff stopped smoking prior to moving to Puerto Rico. Under these facts, Plaintiff alleges that Codefendants engaged in tortious acts outside of Puerto Rico whose effects manifested within Puerto Rico in the form of Plaintiff's lung cancer as diagnosed in April 1996.[2] These tortious acts include (1) marketing cigarettes with manufacturing defects; (2) breaching express warranties; (3) fraudulently misrepresenting the hazards of smoking to consumers; and (4) conspiring to deprive the public of medical and scientific information about smoking.

### 2. Subsection (a)(2) of Rule 4.7

 The Supreme Court of Puerto Rico, however, has not decided if the rule extends jurisdiction when tortious acts are committed outside the commonwealth that cause or manifest injury within the commonwealth. *Mangual v. General Battery Corp.*, 710 F.2d

15 (1st Cir.1983). Before embarking into whether its exercise of personal jurisdiction meets the minimum contacts standard of the Fourteenth Amendment, the Court addresses subsection (a)(2) of Rule 4.7. The Court must analyze whether Puerto Rico's long-arm statute authorizes jurisdiction over nonresident codefendants who commit tortious acts outside Puerto Rico and whose effects are manifested within the island. This subsection authorizes jurisdiction over nonresident defendants if they "participated in tortious acts within Puerto Rico." It is apparent through the pleadings and Plaintiff's deposition that he quit smoking before coming to Puerto Rico in early 1992. It appears, therefore, that any alleged tortious acts by Codefendants must have occurred while Plaintiff lived in the Dominican Republic and Antigua. The Court is, thus, confronted with a matter of statutory interpretation similar to that which was addressed by the court in *Rivera*, 145 F.R.D. at 619 (citing *Davila–Fermin*, 738 F.Supp. at 48–49). The *Rivera* court dealt with the fraudulent use of a visa card. The credit card was illegally obtained outside of Puerto Rico but caused harm to plaintiff in the Commonwealth by damaging his credit profile. The court adopted the construction of Rule 4.7(a)(2) set forth by the First Circuit in *Mangual*, 710 F.2d at 19, where it said that the Rule could be interpreted as extending jurisdiction to the limits of constitutional authority. This Court agrees with the *Rivera* court in that under Rule 4.7's plain language, no tortious acts were committed within Puerto Rico to support the exercise of specific personal jurisdiction using the long-arm statute. "The issue then is one of statutory construction: whether the phrase 'par-

---

**2.** In the Opposition to Defendants' motions to dismiss, Plaintiff relies on *Eagle–Picher Industries, Inc. v. Liberty Mut. Ins.*, 682 F.2d 12 (1st Cir.1982), to support a theory that "defendants have committed a tortious act within Puerto Rico ... because the damaging effects of Plaintiff's smoking habit occurred in this jurisdiction." *Eagle–Picher* concerned the interpretation of certain provisions of an insurance policy, not whether the court could exercise long-arm jurisdiction over nonresident defendants. Moreover, the *Colón* court stated, "[w]e do not read the *Eagle–Picher* decision as a mandate to apply manifestation of symptoms-point of departure criteria to all types of legal tests in ... latent injury

cases.... [T]he introduction of this standard in such absolute form to the context of a personal jurisdiction analysis runs counter to the foreseeability element, which is so much a part of this analysis." 609 F.Supp. at 1480–81.

The Court relies on the analysis in text above for its construction of Rule 4.7(a)(2), not on the erroneous interpretation of *Eagle–Picher* by Plaintiff. Plaintiff's reasoning suggests that he may have chosen any state or territory of the United States to move to after breaking the habit and would have been able to sue from that jurisdiction because the lung cancer manifested in that forum. The *Eagle–Picher* court stated it discourages this interpretation of its decision.

ticipated in tortious acts within Puerto Rico' should be interpreted as including the commission of tortious acts outside Puerto Rico when their effects are felt within the Commonwealth." *Davila–Fermin,* 738 F.Supp. at 48.

The Court holds that Puerto Rico's long-arm statute can be construed, in light of the above analysis, to authorize personal jurisdiction over Codefendants. The Court believes that Plaintiff has successfully established a prima facie case authorizing personal jurisdiction over Codefendants under Puerto Rico's long-arm statute.[3]

It is now necessary for the Court to discuss the next prong of the analysis: whether the exercise of personal jurisdiction is constitutionally permissible under the Fourteenth Amendment's Due Process Clause.

## B. Due Process Analysis

 Even if a federal court's jurisdiction is proper under the forum's long-arm statute, the "court's exercise of personal jurisdiction over a nonresident defendant must comport with constitutional due process requirements when the defendant has purposefully established minimum contacts with the forum state such that the maintenance of the suit [would] not offend traditional notions of fair play and substantial justice." *Rivera,* 145 F.R.D. at 621 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The United States Supreme Court has rejected magic formulas in assessing whether a court can exercise personal jurisdiction. The Court has advised that "the facts of each case must [always] be weighed." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 485–486, 105 S.Ct. 2174, 2189, 85 L.Ed.2d 528 (1985). To assist in the jurisdictional analysis, the Supreme Court has introduced numerous concepts designed to evaluate the "nature and quality of the relationship between the defendant and the forum, the litigation, and to guide the decisionmaker's minimum con-

tacts analysis." *Rivera,* 145 F.R.D. at 621; *see generally United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street* Co., 960 F.2d 1080, 1088 (1st Cir. 1992) (discussing the concepts of purposeful availment, foreseeability, and reasonableness).

### 1. Purposeful Availment

 First, a defendant must have "purposefully avail[ed] itself of the privilege of doing business within a forum thereby invoking the rights and protections of the forum." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The "purposeful availment" requirement guards against the possibility that a defendant may be forced into a forum solely as the result of some "random, isolated, or fortuitous contacts," *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), or "unilateral activity of another party or a third person." *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183.

### 2. Foreseeability

 Second, the concept of foreseeability requires that a defendant's contacts with a forum wanting to exercise personal jurisdiction be pervasive enough such that "he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Once a defendant purposefully conducts activities in a state, he has clear notice and knows or should know that he may be subject to suit in the courts of that jurisdiction.

### 3. Reasonableness: Gestalt Factors

 Even when a defendant purposefully generates connections sufficient to satisfy the minimum contacts requirement, "courts must consider a panoply of other factors which bear upon the fairness [or reasonableness] of subjecting a nonresident to the authority of a foreign tribunal." *Donatelli v. National*

---

**3.** Although Plaintiff proffered very little evidence beyond the pleadings in support of the Court's decision, the review of available case law and, in particular, the inclinations of the Supreme Court of Puerto Rico suggest a not-so-narrow construc-

tion of Rule 4.7. It also seems to be in the interest of the Commonwealth to utilize it statutes to protect its citizens as far as the Constitution permits.

*Hockey League*, 893 F.2d 459, 462 (1st Cir. 1990). The Supreme Court in *Burger King* outlined five criteria for evaluating the reasonableness of exercising personal jurisdiction over a nonresident defendant. The First Circuit in *Donatelli* refers to these criteria as the 'Gestalt factors' (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interest of all the sovereigns in promoting substantive social policies.

### 4. General and Specific Jurisdiction

 "Minimum contacts with a forum may arise through a federal court's general or specific jurisdiction over a nonresident defendant." *Rivera*, 145 F.R.D. at 622. General jurisdiction is invoked "when the litigation is not directly founded on defendant's forum-based contacts but defendant has, nevertheless, engaged in continuous and systematic activities, unrelated to the suit in the forum state." *United Electrical, Radio and Machine Workers of America*, 960 F.2d at 1088 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–416 & n. 9, 104 S.Ct. 1868, 1872–1873 & n. 9, 80 L.Ed.2d 404 (1984)).

 Specific jurisdiction is invoked "where the cause of action arises directly out of or relates to the defendant's forum-based contacts." *Id.* at 1089. The First Circuit has developed a tripartite test (the elements include relatedness, purposeful availment, and the Gestalt factors) for the ascertainment of specific jurisdiction. First, the claim underlying the litigation must directly arise out of, or relate to the defendant's forum-based activities. Second, defendant must purposefully generate in-state contacts, thereby invoking the benefits and protections of the state. This analysis includes the cornerstones of purposeful availment: foreseeability and voluntariness. Third, the exercise of personal jurisdiction must be reasonable in consideration of the Gestalt factors.

### a. Specific Jurisdiction

 Applying the criteria for specific jurisdiction, the Court holds that it cannot exercise jurisdiction. The plaintiff has offered nothing more than an affidavit from his brother-in-law who lives in Puerto Rico stating "that from 1982 until 1991(he) traveled several times per year to the Dominican Republic [and] that in each and all of these trips (he) always brought to (his) brother-in-law Zacarias de la Rosa a package of Marlboro and Winston brand cigarettes for his personal consumption." The brother-in-law also states that he sent a pack of cigarettes with relatives or friends traveling to the Dominican Republic during that time. Plaintiff suggests that the purchase of these cigarettes in Puerto Rico demonstrates that Codefendants' forum-based activities directly gives rise to Plaintiff's cause of action. The Court does not see how the brother-in-law's actions supports specific jurisdiction over Codefendants. The affidavit fails to demonstrate a necessary causal nexus between Codefendants' activities in Puerto Rico and Plaintiff's smoking in the Dominican Republic and Antigua. The claim neither is directly related to nor arises out of Codefendants' Puerto Rico contacts. The quantity of cigarettes procured from Puerto Rico and delivered to Plaintiff via his brother-in-law is not sufficient to meet the relatedness requirement. Plaintiffs must have obtained the substantial majority of cigarettes from other sources throughout his smoking life. The Plaintiff's entire smoking life was in the Dominican Republic and Antigua. The location of the tortious acts, actual harm to Plaintiff occurred while he smoked outside of Puerto Rico.

In further examining the issue of whether the act of an out-of-state defendant that causes tortious injury within the state can subject the defendant to the jurisdiction of a federal court in that forum, the case of *Calder v. Jones*, 465 U.S. 783, 789–790, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984) is instructive on this point. The Supreme Court in *Calder* held that the jurisdiction over nonresident defendants was proper in California "based on the effects of their Florida conduct in California." *Id.* The Court found it persuasive that defendants were not "charged

with mere untargeted negligence" but rather they wrote an article they know would have devastating consequences for respondent. The Court wrote, "Here, the plaintiff is the focus of the activities out of which the suit arises." *Id.*

In the present case, Plaintiff, domiciled in the Dominican Republic, was not the focus of a smoking campaign launched by Codefendants out of which the suit arises. The Supreme Court suggests that to authorize jurisdiction against the nonresident defendant, the negligent conduct must be focused to some reasonable degree against a plaintiff in the forum seeking jurisdiction. Accordingly, Plaintiff fails to convince the Court that the litigation maintains the causal nexus (relatedness) upon which a just exercise of specific jurisdiction may be supported.

Next, the Court examines whether Codefendants purposefully availed themselves of the forum, thereby enjoying the protection of Puerto Rico's laws. The Court is mindful of the two cornerstones of purposeful availment: foreseeability and voluntariness. *Cummings v. Caribe Marketing & Sales Co. Inc.*, 959 F.Supp. 560, 568 (D.P.R. 1997). The foreseeability cornerstone attempts to protect defendants from being haled into court unless they could reasonably have foreseen being subjected to a court's authority. *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567 ("the foreseeability that is critical to due process … is that defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there"). It might take little, if any, analysis to determine that Codefendants could reasonably foresee being subjected to the jurisdiction of Puerto Rico's courts, because at least since the time Plaintiff's brother-in-law was making cigarette runs to the Dominican Republic, both Marlboro and Winston brand cigarettes have been sold in Puerto Rico. However, it is unclear to the Court which entity of RJR and PM made cigarettes available in Puerto Rico. Plaintiff has submitted no evidence to explain the confusion. Accordingly, the Court is unable to determine which entity of RJR or PM has purposefully availed itself of this forum.

The Court, next, considers the voluntariness cornerstone. This factor attempts to protect defendants from being forced to appear in a jurisdiction where its contacts are the result of "[t]he unilateral activity of those who claim some relationship with a nonresident defendant." *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239. The Plaintiff resided in the Dominican Republic during his smoking life. He, without the intervention of Codefendants, moved to Puerto Rico in 1992 and became a legal resident entitling him to invoke the powers of the federal courts in Puerto Rico. The Plaintiff's unilateral activity does not affect any voluntary contacts Codefendants may have had in the island. The Court, again, is unable to determine what voluntary contacts Codefendants had with the forum.

Under the first two elements of the tripartite analysis, relatedness and purposeful availment, the Court finds that it lacks authority to exercise specific jurisdiction over Codefendants. Neither the purposeful availment prong nor the relatedness prong is substantiated by sufficient evidence to show the claim directly arose from Codefendants' contacts on the island. It is unnecessary to consider the Gestalt factors in light of the Court's disposition as to the first two factors. The analysis under the relatedness and purposeful availment for specific jurisdiction, also, is applicable to examine whether Codefendants have sufficient contacts with the forum for purposes of determining the propriety of exercising general jurisdiction.

### b. General Jurisdiction

The inquiry into general jurisdiction has two stages. A court must first determine if minimum contacts are sufficiently abundant. If that constitutional threshold has been satisfied, the court must use the Gestalt factors relevant to deciding the constitutionality (reasonableness) of exercising jurisdiction over a nonresident defendant in accordance with "fair play and substantial justice." *Donatelli*, 893 F.2d at 465.

As a matter of federal due process, to exercise general jurisdiction, the defendant's minimum contacts with the forum must be "systematic and continuous," *Helicopteros Nacionales*, 466 U.S. at 416, 104

S.Ct. at 1873, such that the authorization of personal jurisdiction and the maintenance of the suit over a nonresident corporate defendant does not offend "traditional notions of fair play and substantial justice." *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940).

■ The analysis of minimum contacts is relatively uncomplicated in the current case. For the purposes of general jurisdiction, whose minimum contacts threshold may facilitate or defeat jurisdiction entirely, the Court finds that Codefendants RJR and PM's contacts have not been shown to be substantially systematic and continuous to satisfy the first prong of the analysis.

It is the Plaintiff's burden to proffer evidence beyond the pleadings to the Court that demonstrates at least a bare bones prima facie case for the exercise of general personal jurisdiction. The sworn statement by Plaintiff's brother-in-law is, itself, insufficient to act as support beyond the pleadings so that the Court can exercise jurisdiction over Codefendants. Similar to the dearth of evidence under specific jurisdiction supporting minimum contacts, Plaintiff does not show Codefendants have systematic and continuous contacts sufficient to exercise general jurisdiction. In Plaintiff's Opposition, he provides a great review of the applicable case law for the standards of personal jurisdiction. Unfortunately, Plaintiff falls far short of substantiating his conclusory statement that "defendants' operations establish sufficient contacts or ties with Puerto Rico." The continuous and systematic standard is not buttressed by any evidence beyond the pleadings. Plaintiff apparently assumes that the Court inherently knows Codefendants have systematic and continuous contacts with Puerto Rico. Whether such contacts exist is not for the Court to investigate and prove, but for the Plaintiff to demonstrate through appropriate submissions to the Court, when jurisdiction is challenged.

The Court cannot constitutionally exercise jurisdiction where the Plaintiff does not sufficiently proffer evidence demonstrating that defendants meet the threshold of continuous and systematic contacts. Accordingly, the Court holds that general jurisdiction cannot be exercised over Codefendants.

### III. Conclusion

For the foregoing reasons, Codefendant Philip Morris' Motion to Dismiss (Dkt. No. 12) is **GRANTED** for want of personal jurisdiction; and, similarly, Codefendant R.J. Reynolds/NJ–NC's Motion to Dismiss (Dkt. No. 14) is **GRANTED**. R.J. Reynolds/DE–PR's Motion to Dismiss (Dkt. No. 13) is **GRANTED** as agreed to by the parties. Plaintiffs' Motion for Additional Summons (Dkt. No. 18) is **DENIED** and their claims are hereby **DISMISSED** without prejudice.

**IT IS SO ORDERED.**